UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

NICK ORAM, on behalf of himself and on
behalf of all other similarly situated persons,

                    Plaintiff,

        -against-

SOULCYCLE LLC, SOULCYCLE
HOLDINGS LLC, SOULCYCLE 384
LAFAYETTE STREET, LLC,
SOULCYCLE 350 AMSTERDAM, LLC,
SOULCYCLE 609 GREENWICH STREET,
LLC, SOULCYCLE BRIDGEHAMPTON,
LLC, SOULCYCLE EAST 18TH STREET,
LLC SOULCYCLE EAST 63RD STREET,
LLC, SOULCYCLE EAST HAMPTON,
LLC, SOULCYCLE ROSLYN LLC,
SOULCYCLE SCARSDALE LLC,
SOULCYCLE TRIBECA, LLC,
SOULCYCLE WEST 19TH STREET, LLC,
SOULCYCLE BRENTWOOD, LLC,
SOULCYCLE SANTA MONICA, LLC, and
SOULCYCLE WEST HOLLYWOOD, LLC,

                    Defendants.

------------------------------------------------------------x

Civ. No.: 13 CV 2976 (RWS)

**AFFIDAVIT OF KEVIN S. MORRIS,
ESQ. IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER PLAINTIFF'S
CALIFORNIA CLAIMS AND PARTIES
PURSUANT TO FED. R. CIV. P. 21 AND
TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FED R.
CIV. P. 12(b)(6)**

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

KEVIN S. MORRIS, ESQ., being duly sworn, deposes and says:

      1.  I am the Vice President and General Counsel for Defendants, SoulCycle LLC,

SoulCycle Holdings, LLC, SoulCycle 384 Lafayette Street, LLC, SoulCycle 350 Amsterdam,

LLC, SoulCycle 609 Greenwich Street, LLC, SoulCycle Bridgehampton, LLC, SoulCycle East

18th Street, LLC, SoulCycle East 63rd Street, LLC, SoulCycle East Hampton, LLC, SoulCycle

Roslyn, LLC, SoulCycle Scarsdale, LLC, SoulCycle Tribeca, LLC, SoulCycle West 19th Street,

LLC, SoulCycle Brentwood, LLC, SoulCycle Santa Monica, LLC, and SoulCycle West Hollywood, LLC (collectively hereinafter "SoulCycle").  Based on my review of SoulCycle's business records and my personal knowledge, I am familiar with the facts set forth herein.

2.  A true and correct copy of the following documents are attached hereto as Exhibit "1:" (a) December 18, 2009 email to Plaintiff and attached Offer Letter and Employment Agreement; (b) January 4, 2010 Offer Letter signed by Plaintiff; and, (c) March 14, 2011 Salary Review Letter and revised Employment Agreement.

3.  At the time of Plaintiff's termination, he was paid at a rate of $385.00 per class.

KEVIN S. MORRIS

Sworn to and subscribed before me
this _11_ th day of _June_ 2013.

Notary Public

JUSTINE McGUIRE
Notary Public, State of New York
Qualified in New York County
No. 01MC6267806
My Commission Expires Aug. 27, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June 2013, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Douglas Wigdor, Esq.
David E. Gottlieb, Esq.
THOMPSON WIGDOR LLP
*ATTORNEYS FOR PLAINTIFF*
85 Fifth Avenue
New York, New York 10003


   S/ Joanna S. Smith
Joanna S. Smith, Esq.

4811-4010-6260, v. 2

# EXHIBIT 1



## CONTRACTS

**Julie Rice** <julie@soul-cycle.com>                                      Fri, Dec 18, 2009 at 6:42 PM
To: Nick Oram <nckoram@yahoo.com>

Hi there,

here are the contracts for you to sign.
Let me know if you have any questions.
Talk to you this weekend.
Julie



**2 attachments**

    **Offer Letter_Instructor_Nick Oram.doc**
    37K

    **Employment Agreement_Nick Oram.doc**
    76K

December 18, 2009

Mr. Nick Oram
c/o SoulCycle LLC
133 West 72nd Street, Suite 203
New York, NY 10023

Dear Nick:

It is my pleasure to offer you a full-time position as Master Instructor with SoulCycle LLC (hereinafter referred to as "SoulCycle" or the "Company"). We are thrilled to welcome you to SoulCycle! We believe that every employee contributes directly to our growth, success and happiness, and we hope that you will take pride in being a member of our team.

As a master instructor, you are part of a select group of highly qualified fitness experts and considered a senior member of our team. Accordingly, you will be compensated at a consistently attractive rate, and you will be eligible for all employee benefits programs offered by the Company.

Effective upon your first day of employment, you will be compensated at the fixed rate of $130 per class, payable in semi-monthly installments. As an inducement to accept this offer of employment, the Company will commit to schedule you no less than nine (9) classes per week and pay you a relocation allowance of $3,000. The owners of SoulCycle will review your compensation no less than annually.

You are also entitled to all benefits offered to Master Instructors of the Company, including one week of paid vacation at a fixed rate of $1,170 and up to four weeks of unpaid vacation, employer-paid group health insurance, a clothing and equipment allowance and an employee discount of 30% for purchases at SoulCycle studios.

Your employment is subject to your execution of the SoulCycle Employment Agreement, a copy of which is attached.  If the terms of this offer letter are acceptable to you, please indicate your agreement by countersigning both originals of this letter and returning one copy of each to me.

Sincerely yours,

SOULCYCLE LLC


_____

Julie Rice

Agreed and Accepted:


_____

Nick Oram

# EMPLOYMENT AGREEMENT

This Employment Agreement (hereinafter "the Agreement") is made and entered into as of December 18, 2009 (hereinafter "Effective Date") by and between **SOULCYCLE LLC**, a New York limited liability company, with its principal offices at 117 West 72nd Street, New York, New York 10023 (hereinafter "the Company") and Nick Oram, a California resident with the address of _____[home address] (hereinafter "Employee").

Whereas the Employee wishes to enter into an employment relationship with the Company on the terms and conditions set forth below, in the Offer Letter and in the Employee Handbook, as modified from time to time, in consideration of the benefits and mutual promises contained herein, Employee and the Company hereby agree as follows:

1.    **Employment**

The Company hereby employs Employee to teach indoor cycling as an Instructor commencing on the Effective Date and Employee accepts employment by the Company subject to and in accordance with the terms and conditions of this Agreement (hereinafter "Employment").

2.    **At Will Employment**

Employee's Employment with the Company will be on an "at will" basis, and either the Company or Employee may terminate the employment for any reason and at any time, without notice.

3.    **Works for Hire**

Employee agrees that all work product including, but not limited to, patents, copyrights, product and service developments, deals, compilations, sequences, content and/or concepts created by Employee during Employment are and shall remain the exclusive property of the Company.

4.    **Services and Obligations**

Employee hereby acknowledges that during Employment with the Company Employee has and will have an undivided duty of loyalty to the Company, requiring that Employee devote full time, knowledge, skill, attention, effort, and energies to the business interests of the Company as are necessary to perform the required services of Employment, as set forth below and further requiring that Employee act at all times in the exclusive best interests of the Company. For avoidance of doubt, among the activities that will violate Employee's undivided duty of loyalty to the Company is work in any capacity at any other fitness facility

1

including personal training gym, full-service gym or indoor cycling studio without prior written consent of the Company.

Employee's services during Employment shall be as follows to teach no less than nine (9) classes per week as follows:

       i. in-studio group classes
      ii. instructor training classes (as requested)
    iii. private classes – OR –
    iv. VIP and special event classes (hereinafter, collectively "Classes");

As part of Employee's responsibilities, Employee will be required to attend regular staff meetings, CPR training and continuing education sessions; compile and contribute to the Company's music library no less than one (1) playlist compilation per month; offer content for the Company's website; be available for press at the Company's request; arrive no less than fifteen (15) minutes prior to assigned Classes in order to set up new riders for the Class; perform such additional services as are required in order to comply with policies and procedures established by the Company during Employment, as set forth in employee manuals, instruction manuals, and the like; and keep the Company informed of any difficulties encountered in promptly and satisfactorily providing the services pursuant to this Agreement, (hereinafter, collectively ("Services").

Employee agrees to carry personal training liability insurance and to provide proof of insurance with the Company listed as an Additional Insured party. In the event that Employee fails to procure such liability insurance and notifies Company of such failure, in writing, the Company will procure such liability insurance on behalf of Employee and deduct the premiums from Employee's subsequent paycheck.

5.  **Compensation and Benefits**

For all Services to be rendered by Employee in connection with Employee's employment hereunder, the Company shall pay compensation and provide benefits to Employee as follows:

a.  **Salary and Fees**

The Company shall pay Employee as outlined in the Offer Letter, subject to customary payroll deductions, payable in accordance with the Company's usual payroll schedule.

b.     **Insurance/Benefit Plan**

Employee shall be entitled to individual employer-paid medical insurance (without contribution by Employee) during Employment with the Company in accordance with the applicable terms and conditions of the Company's insurance policies at the time of the execution of this Agreement. Employee shall also be entitled to participate in any existing or newly created Company benefit plan for which Employee is eligible.

c.     **Clothing / Equipment Allowance**

The Company will periodically issue Employee branded apparel and sportswear. Employee agrees to wear such apparel and sportswear during Classes that Employee is leading.

Employee shall be issued a microphone headset to be used in the Company's studios. The Company may require Employee to replace the headset at Employee's expense in the event the company determines that the Employee has lost or damaged it due to negligent care.

d.     **Vacation**

Employee shall be entitled to paid and non-paid vacation as outlined in the Offer Letter. Employee agrees to submit his requests for vacation, whether paid or unpaid, no less than one (1) month prior to the start of such requested vacation.

6.     **Death, Disability**

This Agreement shall be terminated upon the death of Employee, the total or partial disability of Employee where Employee is no longer able to perform Services of Employment without reasonable accommodations. Only salary accrued to date of death, or beginning of the disability shall be paid, which shall be in full satisfaction of the Company's obligations under this Agreement.

7.     **Confidentiality**

Employee acknowledges that during the course of his Employment and relationship with the Company, Employee may receive, possess, handle, become privy to or obtain knowledge of various information which is proprietary information, including but not limited to business matters, affairs, strategies, plans, methods of operation and procedures, information regarding disclosures, processes, systems, methods, formulas, materials, specifications, research activities and plans, business proposals and forecasts, cost data, any non-public information, financial information, benchmark results, contracts, forms,

3

information concerning competitive strengths and weaknesses, promotional and marketing information, data and methods, customer lists, training methods, signature cycling exercises or methods unique to Company, customer and supplier account preferences and requirements, sales and pricing information, advertising information, employee personal information, computer programs, software and documents relating to any of the foregoing (including, but not limited to, program software and documents licensed to the Company), regardless of the form or medium contained or stored in (including but not limited to, hard copy, electronic, or digital form) as well as copies or multiple versions of each, (hereinafter, collectively "Confidential Information"). Such Confidential Information shall be deemed proprietary in nature and vital to the Company's operation and existence. Employee agrees to not divulge, transmit, communicate or make available any Confidential Information to any third party, either during the course of Employment and this Agreement or subsequent to termination without the express written consent of the Company. Employee further agrees that all Confidential Information shall remain the exclusive property and possession of the Company, and shall not be copied, reproduced, used, disclosed or removed from the Company's place of business without the express prior written consent of the Company. For avoidance of doubt, Employee acknowledges that this Confidentiality section of this Agreement shall survive termination of the Employee's employment regardless of reason therefor.

8.    **Covenants Not to Compete, Solicit or Disparage**

a.    Employee hereby covenants and agrees that while employed by the Company and subsequent to the termination of this Agreement, Employee shall not, either independently or for a third party, engage in or conduct any business or render any services which directly or indirectly compete with the Company, or which provide(s) services, methods or techniques that are identical or similar to those which Company provides within any county where the Company maintains a physical geographical location, for a period of two (2) years from the date of such termination, without the expressed prior written consent of the Company. Employee agrees that this non-compete covenant specifically includes, but is not limited to, (1) soliciting, attempting to solicit, or causing to be solicited any party who was an employee of the Company during or at termination of Employment, for employment with Employee, or (2) soliciting, attempting to solicit, or causing to be solicited any party who was retained by the Company during or at termination of Employment or actively solicited to become a consultant by the Company, its agents, representatives or employees, within twelve (12) months prior to the termination of the Employment, for employment with Employee, whether as an employee or as a consultant, (3) hiring or employing any employee or other person associated with the Company on behalf of any individual, corporation or other entity including on behalf of Employee, or inducing or attempting to induce any employee or other person associated with the Company

4

(including, but not limited to, consultants under contract with the Company) to leave the employ of or cease doing business with the Company, and (4) inducing or attempting to a induce any customer, consultant, supplier, vendor or any other person or entity to cease doing business with the Company.  Employee further agrees that, in the event that Employee engages at any time in any authorized business or professional activity other than his duties to the Company, Employee will not use any trademarks, service marks, trade names, slogans, domain names or any other Intellectual Property owned or used by the Company, including, but not limited to, the name "SoulCycle", or associate or use the word "soul" with the words "cycle", "cycles", "cycling", "bike" or "biking" ("Intellectual Property"), or in association with a cycling business of any kind, without the Company's prior written consent. Employee acknowledges that the restrictions imposed herein are reasonable and necessary to protect the legitimate business interest of the Company.  Employee further acknowledges that it is impossible to measure the monetary damages to the Company by reason of breach of any of the provisions contained herein, and that, in the event of a breach by Employee, the Company shall be entitled to equitable relief, including the right to enjoin Employee.  Employee further understands and agrees that if a court shall hold any part of this non-compete/non-solicit as unenforceable due to its general scope, duration, or geographic restriction, then in such event Employee agrees that the scope, duration or geographic restriction shall be amended to the greatest scope, longest period of time and the largest geographical area enforceable under the applicable law. Notwithstanding the foregoing, should the Company terminate Employee's Employment for reasons other than for cause, then the non-compete provision of this paragraph shall not apply; however, the non-solicit provision shall remain in effect.

b.    Employee shall not at any time during Employment or after termination engage in any form of conduct, or make statements or representations, that disparage, denigrate, impugn or otherwise impair the reputation, goodwill or interests of the Company, its employees, representatives, owners, or agents. Further, Employee shall not issue, cause, or to the extent within Employee's control, permit to be issued or cooperate with the issuance of any release, interview, publicity or statement, whether oral or written, of any kind, to any individual, the public, the press or the media which in any way concerns the Company, its employees, representatives, owners, or agents at anytime during Employment or after termination, without of the prior written consent of the Company; provided, however, Employee may describe the nature of the work Employee performs or performed for the Company (as long as Employee does not disclose any Confidential Information or use any Intellectual Property).

c.    For avoidance of doubt, Employee acknowledges that this Covenants Not to Compete, Solicit or Disparage section of this Agreement shall survive termination of the Employee's employment regardless of reason therefor.

9.    **Breach and Injunctive Relief**

Employee agrees that any breach of this Agreement by Employee will cause irreparable damage to the Company and that in the event of such breach the Company shall have, in addition to any and all remedies of law, the right to preliminary, temporary and permanent injunctive relief (without the necessity of proving irreparable harm unless otherwise indicated by law), specific performance or other equitable relief, to prevent the violation of Employee's obligations hereunder. Nothing herein contained shall be construed as prohibiting the Company from pursuing any other remedy available for such breach or threatened breach. If Employee breaches this Agreement, which breach has not been cured within ten (10) days after receipt of written notice thereof from the Company to Employee, Employee shall be liable for attorney's fees and costs incurred by the Company in connection with the enforcement of its rights under this Agreement.

10.    **Electronic Communication Systems**

Employee shall not use for personal use any of the Company's electronic communication systems, including but not limited to, desktop or laptop computers, fax machines, PDAs, telephones, cell phones, portable data storage devices, such as memory cards, disk drives, CDs, DVDs, floppy disks or any other type of magnetic or optical storage device or any other device of similar function (hereinafter collectively, "Devices"). Employee shall not remove any Device(s) from the Company's premises without prior written consent of the Company.

11.    **Governing Law**

The parties agree and consent to the exclusive jurisdiction of the federal and state courts located in New York, New York applying the internal laws of the State of New York.

12.    **Miscellaneous**

(a)    Construction. This Agreement is the product of arms-length negotiations between the parties, and none of the parties shall be deemed the drafter hereof, or shall have any term herein construed against it by virtue of being or being deemed to be the drafter hereof. Each party to this Agreement has had the opportunity to review it with counsel. This Agreement will be fairly interpreted in accordance with its terms, without any structure in favor of or against either party.

(b)     Entire Agreement.  This instrument contains the entire Agreement of the parties and supersedes any prior understandings between the parties, whether oral or written.  Any changes in this Agreement must be in writing and signing by both parties

(c)     Waiver.  Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or prevent the enforcement of any other provision hereof.

(d)     Severability.  This Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.  If any provision or paragraph of this Agreement shall be prohibited by or invalid under such law, such provision or paragraph shall be ineffective only to the extent of such prohibition or invalidity, without invaliding the remainder of such provision or paragraph or the remaining provisions or paragraphs of this Agreement.

(e)     Succession/Assignment. This Agreement shall inure to the benefit of and be binding upon the parties hereto and upon their successors in interest; provided, however, that Employee shall not assign his rights or obligations under this Agreement without the prior written consent of Company.  Company may assign this Agreement, in whole or in part, in its sole discretion.

(f)     Notices.  All notices under this Agreement shall be in writing and shall be given to the other party at their respective addresses as herein set forth or at such other address as any of the parties may hereafter specify in writing. Unless delivered personally, such notice shall be given by certified mail, return receipt requested, postage prepaid, and if so mailed, shall be deemed to have been given on the date of such mailing.

(g)     Headings. All headings set forth in this Agreement are intended for convenience only; they form no part of this Agreement and shall not affect its interpretation.

(h)     Counterparts. This Agreement may be executed in several counterparts, one such counterpart for each party hereto, and each copy of which shall serve as an original for all purposes, but all counterpart copies shall constitute but one and the same agreement.

*IN WITNESS WHEREOF,* this Agreement has been duly executed by the parties as of the date first above written.

**SOULCYCLE LLC**                                   **NICK ORAM**


By_____                    By_____
Name:_____                    Name:_____
Title:_____                    Date:_____
Date:_____

December 18, 2009

Mr. Nick Oram
c/o SoulCycle LLC
133 West 72nd Street, Suite 203
New York, NY 10023

Dear Nick:

It is my pleasure to offer you a full-time position as Master Instructor with SoulCycle LLC (hereinafter referred to as "SoulCycle" or the "Company"). We are thrilled to welcome you to SoulCycle! We believe that every employee contributes directly to our growth, success and happiness, and we hope that you will take pride in being a member of our team.

As a master instructor, you are part of a select group of highly qualified fitness experts and considered a senior member of our team. Accordingly, you will be compensated at a consistently attractive rate, and you will be eligible for all employee benefits programs offered by the Company.

Effective upon your first day of employment, you will be compensated at the fixed rate of $130 per class, payable in semi-monthly installments. As an inducement to accept this offer of employment, the Company will commit to schedule you no less than nine (9) classes per week and pay you a relocation allowance of $3,000. The owners of SoulCycle will review your compensation no less than annually.

You are also entitled to all benefits offered to Master Instructors of the Company, including one week of paid vacation at a fixed rate of $1,170 and up to four weeks of unpaid vacation, employer-paid group health insurance, a clothing and equipment allowance and an employee discount of 30% for purchases at SoulCycle studios.

Your employment is subject to your execution of the SoulCycle Employment Agreement, a copy of which is attached.  If the terms of this offer letter are acceptable to you, please indicate your agreement by countersigning both originals of this letter and returning one copy of each to me.

Sincerely yours,

SOULCYCLE LLC


_____

Julie Rice

Agreed and Accepted:


_____

Nick Oram

January 4, 2010


Mr. Nick Oram
c/o SoulCycle LLC
133 West 72nd Street, Suite 203
New York, NY 10023

Dear Nick:

It is my pleasure to offer you a full-time position as Master Instructor with SoulCycle LLC (hereinafter referred to as "SoulCycle" or the "Company"). We are thrilled to welcome you to SoulCycle! We believe that every employee contributes directly to our growth, success and happiness, and we hope that you will take pride in being a member of our team.

As a master instructor, you are part of a select group of highly qualified fitness experts and considered a senior member of our team. Accordingly, you will be compensated at a consistently attractive rate, and you will be eligible for all employee benefits programs offered by the Company.

Effective upon your first day of employment, you will be compensated at the fixed rate of $130 per class, payable in semi-monthly installments. As an inducement to accept this offer of employment, the Company will commit to schedule you no less than eleven (11) classes per week and pay you a relocation allowance of $3,000. The owners of SoulCycle will review your compensation no less than annually.

You are also entitled to all benefits offered to Master Instructors of the Company, including one week of paid vacation at a fixed rate of $1,170 and up to four weeks of unpaid vacation, employer-paid group health insurance, a clothing and equipment allowance and an employee discount of 30% for purchases at SoulCycle studios.

Your employment is subject to your execution of the SoulCycle Employment Agreement, a copy of which is attached. If the terms of this offer letter are acceptable to you, please indicate your agreement by countersigning both originals of this letter and returning one copy of each to me.

Sincerely yours,

SOULCYCLE LLC

Julie Rice

Agreed and Accepted:

Nick Oram

March 14, 2011


Nick Oram
c/o SoulCycle LLC
103 Warren Street
New York, NY 10007

Dear Nick:

It is my pleasure to acknowledge your outstanding performance as a Master Instructor. You have distinguished yourself among your peers here at SoulCycle through your reliability and consistency as an Instructor and your demonstrated ability to fill the seats in your assigned classes.

Accordingly, effective January 4, 2011, your base class fee will increase to two hundred dollars ($200), payable in semi-monthly installments. The owners of SoulCycle will review your compensation annually.

You will continue to be entitled to all benefits offered to key employees of the Company, including three paid sick/personal days, two weeks paid vacation (payable at $1,500 per week), employer-paid group health insurance and an employee discount of 30% for purchases at SoulCycle studios.

Your employment is subject to your execution of the SoulCycle Employment Agreement, a copy of which is attached. If the terms of this salary review letter are acceptable to you, please indicate your agreement by countersigning both originals of this letter and returning one copy of each to me.

Sincerely yours,

SOULCYCLE LLC


Julie Rice


Agreed and Accepted:


Nick Oram

# EMPLOYMENT AGREEMENT

This Employment Agreement (hereinafter "the Agreement") is made and entered into as of March 14, 2011 (hereinafter "Effective Date") by and between **SOULCYCLE LLC**, a New York limited liability company, with its principal offices at 103 Warren Street, New York, New York 10007 (hereinafter "the Company") and **Nick Oram**, a New York resident with the address of 90 West Street, Apt. #4G, New York, NY 10006 (hereinafter "Employee").

Whereas the Employee wishes to enter into an employment relationship with the Company on the terms and conditions set forth below, in the Offer Letter and/or Salary Review Letter and in the Employee Handbook, as modified from time to time, in consideration of the benefits and mutual promises contained herein, Employee and the Company hereby agree as follows:

1.    **Employment**

The Company hereby employs Employee to teach indoor cycling as a Master Instructor commencing on the Effective Date and Employee accepts employment by the Company subject to and in accordance with the terms and conditions of this Agreement (hereinafter "Employment").

2.    **At Will Employment**

Employee's Employment with the Company will be on an "at will" basis, and either the Company or Employee may terminate the employment for any reason and at any time, without notice.

3.    **Works for Hire**

Employee agrees that all work product including, but not limited to, patents, copyrights, product and service developments, deals, compilations, sequences, content and/or concepts created by Employee during Employment and related to indoor cycling instruction are and shall remain the exclusive property of the Company.

4.    **Services and Obligations**

Employee hereby acknowledges that during Employment with the Company Employee has and will have an undivided duty of loyalty to the Company, requiring that Employee devote full time knowledge, skill, attention, effort, and energies to the business interests of the Company as are necessary to perform the required services of Employment, as set forth below and further requiring that Employee act at all times in the exclusive best interests of the Company. For avoidance of doubt, among the activities that will violate Employee's undivided duty of loyalty to the Company is work in any capacity at any other fitness

1

facility, full-service gym or indoor cycling studio without prior written consent of the Company, provided, however that Employee may train private clients in one on one personal training.

Employee's services during Employment shall be to teach no less than **eleven (11)** classes per week as follows:

      i. in-studio group classes
     ii. instructor training classes (as requested)
    iii. private classes – OR –
    iv. VIP and special event classes (hereinafter, collectively "Classes");

As part of Employee's responsibilities, Employee will be required to attend regular staff meetings, CPR training and continuing education sessions; compile and contribute to the Company's music library no less than one (1) playlist compilation per month; offer content for the Company's website; be available for press at the Company's request; arrive no less than fifteen (15) minutes prior to assigned Classes in order to set up new riders for the Class; perform such additional services as are required in order to comply with policies and procedures established by the Company during Employment, as set forth in employee manuals, instruction manuals, and the like; and keep the Company informed of any difficulties encountered in promptly and satisfactorily providing the services pursuant to this Agreement, (hereinafter, collectively ("Services").

Employee agrees to carry personal training liability insurance and to provide proof of insurance with the Company listed as an Additional Insured party. In the event that Employee fails to procure such liability insurance and notifies Company of such failure, in writing, the Company will procure such liability insurance on behalf of Employee and deduct the premiums from Employee's subsequent paycheck.

5.    **Compensation and Benefits**

For all Services to be rendered by Employee in connection with Employee's employment hereunder, the Company shall pay compensation and provide benefits to Employee as follows:

a.    **Salary and Fees**

The Company shall pay Employee as outlined in the Offer and/or Salary Review Letter, subject to customary payroll deductions, payable in accordance with the Company's usual payroll schedule.

2

**b.**     **Insurance/Benefit Plan**

Employee shall be entitled to individual employer-paid medical insurance (without contribution by Employee) during Employment with the Company in accordance with the applicable terms and conditions of the Company's insurance policies at the time of the execution of this Agreement and as outlined in the Offer and/or Salary Review Letter. Employee shall also be entitled to participate in any existing or newly created Company benefit plan for which Employee is eligible.

**c.**     **Clothing / Equipment Allowance**

The Company will periodically issue Employee branded apparel and sportswear. Employee agrees to wear such apparel and sportswear during her/his Employment/Classes that Employee is leading.

Employee shall be issued a microphone headset to be used in the Company's studios. The Company may require Employee to replace the headset at Employee's expense in the event the company determines that the Employee has lost or damaged it due to negligent care.

**d.**     **Vacation**

Employee shall be entitled to paid and non-paid vacation as outlined in the Offer and/or Salary Review Letter. Employee agrees to submit her/his requests for vacation, whether paid or unpaid, no less than one (1) month prior to the start of such requested vacation.

6.     **Death, Disability**

This Agreement shall be terminated upon the death of Employee, the total or partial disability of Employee where Employee is no longer able to perform Services of Employment without reasonable accommodations. Only salary accrued to date of death, or beginning of the disability shall be paid, which shall be in full satisfaction of the Company's obligations under this Agreement.

7.     **Confidentiality**

    a.   Employee acknowledges that during the course of her/his Employment and relationship with the Company, Employee may receive, possess, handle, become privy to or obtain knowledge of various information which is proprietary information, including but not limited to business matters, affairs, strategies, plans, methods of operation and procedures, information regarding disclosures, processes, systems, methods, formulas, materials, specifications, research activities and plans, business proposals and forecasts, cost data, any non-public information, financial information,

3

benchmark results, contracts, forms, information concerning competitive strengths and weaknesses, promotional and marketing information, data and methods, customer lists, training methods, signature cycling exercises or methods unique to Company, customer and supplier account preferences and requirements, sales and pricing information, advertising information, employee personal information, computer programs, software and documents relating to any of the foregoing (including, but not limited to, program software and documents licensed to the Company), regardless of the form or medium contained or stored in (including but not limited to, hard copy, electronic, or digital form) as well as copies or multiple versions of each, (hereinafter, collectively "Confidential Information"). Such Confidential Information shall be deemed proprietary in nature and vital to the Company's operation and existence. Employee agrees to not divulge, transmit, communicate or make available any Confidential Information to any third party, either during the course of Employment and this Agreement or subsequent to termination without the express written consent of the Company. Employee further agrees that all Confidential Information shall remain the exclusive property and possession of the Company, and shall not be copied, reproduced, used, disclosed or removed from the Company's place of business without the express prior written consent of the Company. For avoidance of doubt, Employee acknowledges that this Confidentiality section of this Agreement shall survive termination of the Employee's employment regardless of reason therefor.

b.  Employee further agrees to keep the terms of this Agreement and the associated Offer and/or Salary Review Letter confidential. Employee acknowledges that the Company may terminate her/him for cause in the event of breach of this provision.

## 8.  Covenants Not to Compete, Solicit or Disparage

a.  Employee hereby covenants and agrees that while employed by the Company and subsequent to the termination of this Agreement by Employer, Employee shall not, either independently or for a third party, engage in or conduct any business or render any services which directly or indirectly compete with the Company, or which provide(s) services, methods or techniques that are identical or similar to those which Company provides within any county where the Company maintains a physical geographical location, for a period of two (2) years from the date of such termination, without the expressed prior written consent of the Company. Employee agrees that this non-compete covenant specifically includes, but is not limited to, (1) soliciting, attempting to solicit, or causing to be solicited any party who was an employee of the Company during or at termination of Employment, for employment with Employee, or (2) soliciting, attempting to solicit, or causing to be solicited any party

4

who was retained by the Company during or at termination of Employment or actively solicited to become a consultant by the Company, its agents, representatives or employees, within twelve (12) months prior to the termination of the Employment, for employment with Employee, whether as an employee or as a consultant, (3) hiring or employing any employee or other person associated with the Company on behalf of any individual, corporation or other entity including on behalf of Employee, or inducing or attempting to induce any employee or other person associated with the Company (including, but not limited to, consultants under contract with the Company) to leave the employ of or cease doing business with the Company, and (4) inducing or attempting to induce any customer, consultant, supplier, vendor or any other person or entity to cease doing business with the Company. Employee further agrees that, in the event that Employee engages at any time in any authorized business or professional activity other than her/his] duties to the Company, Employee will not use any trademarks, service marks, trade names, slogans, domain names or any other Intellectual Property owned or used by the Company, including, but not limited to, the name "SoulCycle", or associate or use the word "soul" with the words "cycle", "cycles", "cycling", "bike" or "biking" ("Intellectual Property"), or in association with a cycling business of any kind, without the Company's prior written consent. Employee acknowledges that the restrictions imposed herein are reasonable and necessary to protect the legitimate business interest of the Company. Employee further acknowledges that it is impossible to measure the monetary damages to the Company by reason of breach of any of the provisions contained herein, and that, in the event of a breach by Employee, the Company shall be entitled to seek equitable relief, including the right to enjoin Employee. Employee further understands and agrees that if a court shall hold any part of this non-compete/non-solicit as unenforceable due to its general scope, duration, or geographic restriction, then in such event Employee agrees that the scope, duration or geographic restriction shall be amended to the greatest scope, longest period of time and the largest geographical area enforceable under the applicable law. Notwithstanding the foregoing, should the Company terminate Employee's Employment for reasons other than for cause, then the non-compete provision of this paragraph shall not apply; however, the non-solicit provision shall remain in effect. Cause includes conviction of a crime (felony) and violation of Sections 7 and 8.

b.  Employee shall not at any time during Employment or after termination engage in any form of conduct, or make statements or representations, that disparage, denigrate, impugn or otherwise impair the reputation, goodwill or interests of the Company, its employees, representatives, owners, or agents. Further, Employee shall not issue, cause, or to the extent within Employee's control, permit to be issued or cooperate with the issuance of any release, interview, publicity or statement, whether oral or written, of

any kind, to any individual, the public, the press or the media which in any way concerns the Company, its employees, representatives, owners, or agents at anytime during Employment or after termination, without the prior written consent of the Company; provided, however, Employee may describe the nature of the work Employee performs or performed for the Company (as long as Employee does not disclose any Confidential Information or use any Intellectual Property).

c.   Except as otherwise provided above, Employee acknowledges that the Covenants Not to Compete, Solicit or Disparage section of this Agreement shall survive termination of the Employee's employment regardless of reason therefor.

9.   **Breach and Injunctive Relief**

Employee agrees that any breach of this Agreement by Employee will cause irreparable damage to the Company and that in the event of such breach the Company shall have, in addition to any and all remedies of law, the right to preliminary, temporary and permanent injunctive relief (without the necessity of proving irreparable harm unless otherwise indicated by law), specific performance or other equitable relief, to prevent the violation of Employee's obligations hereunder.   Nothing herein contained shall be construed as prohibiting the Company from pursuing any other remedy available for such breach or threatened breach.   If Employee breaches this Agreement, which breach has not been cured within ten (10) days after receipt of written notice thereof from the Company to Employee, Employee shall be liable for attorney's fees and costs incurred by the Company in connection with the enforcement of its rights under this Agreement.

10.   **Electronic Communication Systems**

Employee shall not use for personal use any of the Company's electronic communication systems, including but not limited to, desktop or laptop computers, fax machines, PDAs, telephones, cell phones, portable data storage devices, such as memory cards, disk drives, CDs, DVDs, floppy disks or any other type of magnetic or optical storage device or any other device of similar function (hereinafter collectively, "Devices"). Employee shall not remove any Device(s) from the Company's premises without prior written consent of the Company.

11.   **Governing Law**

The parties agree and consent to the exclusive jurisdiction of the federal and state courts located in New York, New York applying the internal laws of the State of New York.

12.   **Miscellaneous**

(a)     Construction.  This Agreement is the product of arms-length negotiations between the parties, and none of the parties shall be deemed the drafter hereof, or shall have any term herein construed against it by virtue of being or being deemed to be the drafter hereof. Each party to this Agreement has had the opportunity to review it with counsel. This Agreement will be fairly interpreted in accordance with its terms, without any structure in favor of or against either party.

(b)     Entire Agreement.  This instrument contains the entire Agreement of the parties and supersedes any prior understandings between the parties, whether oral or written.  Any changes in this Agreement must be in writing and signing by both parties

(c)     Waiver.  Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or prevent the enforcement of any other provision hereof.

(d)     Severability.  This Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.  If any provision or paragraph of this Agreement shall be prohibited by or invalid under such law, such provision or paragraph shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or paragraph or the remaining provisions or paragraphs of this Agreement.

(e)     Succession/Assignment. This Agreement shall inure to the benefit of and be binding upon the parties hereto and upon their successors in interest; provided, however, that Employee shall not assign her/his rights or obligations under this Agreement without the prior written consent of Company.  Company may assign this Agreement, in whole or in part, in its sole discretion.

(f)     Notices.  All notices under this Agreement shall be in writing and shall be given to the other party at their respective addresses as herein set forth or at such other address as any of the parties may hereafter specify in writing. Unless delivered personally, such notice shall be given by certified mail, return receipt requested, postage prepaid, and if so mailed, shall be deemed to have been given on the date of such mailing.

(g)     Headings. All headings set forth in this Agreement are intended for convenience only; they form no part of this Agreement and shall not affect its interpretation.

(h)     Counterparts. This Agreement may be executed in several counterparts, one such counterpart for each party hereto, and each copy of which shall serve as an original for all purposes, but all counterpart copies shall constitute but one and the same agreement.

*IN WITNESS WHEREOF,* this Agreement has been duly executed by the parties as of the date first above written.

**SOULCYCLE LLC**                                      **NICK ORAM**

By _Julie Rice_                                        By _[signature]_
Name: _Julie R._                                       Name: _Nick Oram_
Title: _partner_                                        Date: _3-17-14_
Date: _3-17-11_

8