UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NICK ORAM, on behalf of himself and on behalf : 
of all other similarly situated persons,       :
                                               :
                        Plaintiff,             :
                                               :
            v.                                 :        Civil Action No. 13-CV-2976 (RWS)
                                               :
SOULCYCLE, LLC, SOULCYCLE                      :
HOLDINGS LLC, SOULCYCLE 384                    :
LAFAYETTE STREET, LLC, SOULCYCLE               :
350 AMSTERDAM, LLC, SOULCYCLE 609              :
GREENWICH STREET, LLC, SOULCYCLE               :
BRIDGEHAMPTON, LLC, SOULCYCLE                  :
EAST 18TH STREET, LLC, SOULCYCLE               :
EAST 63RD STREET, LLC, SOULCYCLE               :
EAST HAMPTON, LLC, SOULCYCLE                   :
ROSLYN, LLC, SOULCYCLE SCARSDALE               :
LLC, SOULCYCLE TRIBECA, LLC,                   :
SOULCYCLE WEST 19TH STREET, LLC,               :
SOULCYCLE BRENTWOOD, LLC,                      :
SOULCYCLE SANTA MONICA, LLC, and               :
SOULCYCLE WEST HOLLYWOOD, LLC,                 :
                                               :
                        Defendants.            :
-----------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
PORTIONS OF PLAINTIFF'S AMENDED COMPLAINT, SEVER PLAINTIFF'S
CALIFORNIA CLAIMS AND TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

THOMPSON WIGDOR LLP
Douglas H. Wigdor
David E. Gottlieb
85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT ............................................................................................................ 5

    I.    MR. ORAM HAS PROPERLY PLEADED VIOLATIONS OF THE NEW YORK LABOR LAW ............................................................................................ 5

        A.  Standard on Motion to Dismiss .......................................................... 5

        B.  Defendants Failed to Pay the Minimum Wage for Each Hour Worked ................. 6

        C.  Defendants Failed to Pay Plaintiff a Proper Wage for Each Hour Worked in Violations of NYLL §§ 191 and 193 ....................... 9

        D.  Defendants Improperly Deducted Business Expenses in Violation of New York Law ...................................................................... 12

        E.  Mr. Oram Has Sufficiently Alleged Retaliation ................................ 14

    II.    THERE IS NO BASIS FOR SEVERING THE CALIFORNIA CLASS ................... 18

        A.  The Claims Arise out of the Same Transaction ................................. 19

        B.  The Claims Present Common Questions of Law and Fact .................. 20

        C.  Different Witnesses and Documentary Proof are Not Required for the New York and California Claims ................................................. 23

    III.    NO PORTION OF THE AMENDED COMPLAINT SHOULD BE STRICKEN ..... 24

CONCLUSION ........................................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**

*Aledia v. HSH Nordbank AG*,
    08 Civ. 4342, 2009 WL 855951 (S.D.N.Y. Mar. 25, 2009) ..............................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................6

*Baergas v. City of New York*,
    No. 04CIV2944 (BSJ)(HBP), 2005 WL 2105550 (S.D.N.Y. Sept. 1, 2005) ...................19

*Ballen–Stier v. Hahn & Hessen, L.L.P.*,
    727 N.Y.S.2d 421 (1st Dep't 2001) .................................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................5

*Blesedell v. Mobil Oil Co.*,
    708 F.Supp. 1408 (S.D.N.Y. 1989) ..........................................................................19, 20

*Barnhart v. Town of Parma*,
    252 F.R.D. 156 (W.D.N.Y. 2008)..................................................................................19

*Boland v. Town of Newington*,
    No. 3:05 Civ. 01739 (VLB), 2007 WL 2071630 (D.Conn. July 16, 2007) .....................15

*Boschert v. Pfizer, Inc.*,
    No. 4:08 Civ. 1714 CAS, 2009 U.S. Dist. Lexis 41261 (E.D. Mo. May 14, 2009) .........21

*Castagna v. Luceno*,
    09 Civ. 9332 CS, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011)....................................16

*Cardenas v. McLane Food Services, Inc.*,
    796 F.Supp.2d 1246 (C.D. Cal. 2011) ...........................................................................8

*Coleman v. Quaker Oats Co.*,
    232 F.3d 1271 (9th Cir. 2000) .....................................................................................21

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    788 F. Supp. 2d 253 (S.D.N.Y. 2011)............................................................................16

*Dare v. Comcast Corp*,
    No. 09–4175 (NLH)(JS), 2010 WL 2557678 (D.N.J. June 23, 2010)........................21, 23

*Deskovic v. City of Peekskill*,
    673 F.Supp.2d 154 (S.D.N.Y. 2009)................................................................19

*Duke v. Uniroyal Inc.*,
    928 F.2d 1413 (4th Cir. 1991) ........................................................................20

*Electchester Hous. Project, Inc. v. Rosa*,
    639 N.Y.S.2d 848 (2d Dep't 1996).................................................................16

*Epstein v. Kemper Ins. Companies*,
    210 F.Supp.2d 308 (S.D.N.Y. 2002)...............................................................22

*Erausquin v. Notz, Stucki Management (Bermuda) Ltd.*,
    806 F.Supp.2d 712 (S.D.N.Y. 2011)................................................................18

*Farricker v. Penson Dev., Inc.*,
    07 Civ. 11191 (DAB), 2009 WL 860239 (S.D.N.Y. Mar. 31, 2009) .................9

*Fong v. Rego Park Nursing Home*,
    No. 95 Civ. 4445 (SJ), 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996).................19

*Garcia v. Giorgio's Brick Oven & Wine Bar*,
    No. 11 Civ. 4689(LLS)(FM), 2012 WL 3339220 (S.D.N.Y. Aug. 15, 2012) ....9

*Gerace v. Cliffstar Corp.*,
    No. 05 Civ. 65S (WMS), 2009 WL 5042621(W.D.N.Y. Dec. 15, 2009).........19

*Gonzalez v. Downtown LA Motors, LP*,
    215 Cal. App. 4th 36 (Cal. Dist. Ct. App. 2013) ...............................................8

*In re Digital Music*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)..............................................................22

*In re Neurontin Marketing and Sales Practices Litigation*,
    810 F.Supp.2d 366 (D. Mass. 2011) ................................................................24

*In re WorldCom, Inc. Securities Litigation*,
    No. 02 Civ. 3288(DLC), 2003 WL 1563412 (S.D.N.Y.  March 25, 2003) ......19

*Kehr ex rel. Kehr v. Yamaha Motor Corp.*,
    *U.S.A.*, 596 F.Supp.2d 821 (S.D.N.Y. 2008) ..................................................24

*Kreinik v. Showbran Photo, Inc.*,
    No. 02 Civ.1172 (RMB)(DF) , 2003 WL 22339268 (S.D.N.Y. Oct.14, 2003)................16

*Laureano v. Goord*,
    No. 06 Civ. 7845(SHS)(RLE), 2007 WL 2826649 (S.D.N.Y. Aug.31, 2007) ................23

*Lewis v. Triborough Bridge & Tunnel Auth.*,
    97 Civ. 0607 (PKL), 2000 WL 423517 (S.D.N.Y. Apr. 19, 2000)..................................23

*Lin v. Benihana Nat'l Corp.*,
    755 F.Supp.2d 504 (S.D.N.Y. 2010)..............................................................................13

*Liverpool v. Con-Way, Inc.*,
    08 Civ. 4076 (JG)(JO), 2009 WL 1362965 (E.D.N.Y. May 15, 2009) ......................15, 16

*Lynch v. Southampton Animal Shelter Foundation Inc., et al.*,
    278 F.R.D. 55 (2011) ......................................................................................................24

*Maldonado v. La Nueva Rampa, Inc.*,
    10 Civ. 8195 (LLS)(JLC) 2012 WL 1669341 (S.D.N.Y. May 14, 2012)...................12, 14

*Mosley v. General Motors Corp*,
    497 F.2d 1330 (8th Cir. 1974) ..................................................................................20, 23

*Richardson v. Marsh*,
    481 U.S. 200 (1987).........................................................................................................22

*Robinson v. Shell Oil Co.*,
    519 U.S. 337(1997)..........................................................................................................15

*Rodriguez v. Almighty Cleaning, Inc.*,
    784 F. Supp. 2d 114 (E.D.N.Y. 2011) ...............................................................................6

*S.E.C. v. Treadway*,
    No. 11 Civ. 1534, 2011 WL 2623469 (S.D.N.Y. June 29, 2011).....................................25

*Severin v. Project Ohr, Inc.*,
    10 Civ. 9696 (DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012). .................................7

*Thomas v. Meyers Associates, L.P.*,
    39 Misc.3d 1217(A), Slip Copy, 2013 WL 1777483 (N.Y. Sup. April 18, 2013)..............6

*Todaro v. Siegel Fenchel & Peddy, P.C.*,
    No. 04 Civ. 2939 (JS)(WDW), 2008 WL 682596 (E.D.N.Y. 2008) ................................22

*Wachter v. Kim*,
    920 N.Y.S.2d 66 (1st Dep't 2011) ..................................................................................10

*Winfield v. Citibank*, N. A.,
   No. 10 Civ. 7304 (JGK) 2012 WL 266887 (S.D.N.Y. January 30, 2012)........................24

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*,
   No. 99 CIV 0682 (RWS), 2001 WL 963943 (S.D.N.Y. August 23, 2001) .......................18

*Wilkes v. Genzyme Corp* Civ. No.
   WMN-10-1683 at p. 3-5, 2011 U.S. Dist. LEXIS 49881 (D. Md. May 10, 2011)............21

*Wing Kwong Ho v. Target Const. of NY, Corp.*,
   No. 08 Civ. 4750 (KAM)(RER), 2011 WL 1131510 (E.D.N.Y. March 28, 2011).............9

## **STATUES**

12 NYCRR § 142–2.10(b) .................................................................................................14

Cal. Code Regs., tit. 8, § 11040, subd. (4)(B)...................................................................8

N.Y.C.R.R. § 142-2.16 .....................................................................................................11

N.Y.C.R.R. § 142-3.11 .....................................................................................................13

NYLL § 191(1)(a).............................................................................................................9

NYLL § 193.......................................................................................................2, 9, 12, 13

NYLL § 198(1-a) ...............................................................................................................25

NYLL § 215 ............................................................................................................. *passim*

NYLL § 652 ............................................................................................................. *passim*

## **OTHER AUTHORITIES**

Rule 12(f) of the Federal Rules of Civil Procedure ...................................................24, 26

Rule 21 of the Federal Rules of Civil Procedure ......................................................16, 26

Rule 5.6 of the Rules of Professional Conduct ...........................................................16

Plaintiff Nick Oram, by and through undersigned counsel, hereby submits this memorandum of law in opposition to Defendants SoulCycle, LLC, SoulCycle Holdings LLC, SoulCycle 384 Lafayette Street, LLC, SoulCycle 350 Amsterdam, LLC, SoulCycle 609 Greenwich Street, LLC, SoulCycle Bridgehampton, LLC, SoulCycle East 18th Street, LLC, SoulCycle East 63rd Street, LLC, SoulCycle East Hampton, LLC, SoulCycle Roslyn, LLC, SoulCycle Scarsdale LLC, SoulCycle Tribeca, LLC, SoulCycle West 19th Street, LLC, SoulCycle Brentwood, LLC, SoulCycle Santa Monica, LLC, and SoulCycle West Hollywood, LLC's ("Defendants" or "SoulCycle") motion to dismiss Plaintiff's Amended Complaint.  For the reasons stated herein, Defendants' motion should be denied.

## PRELIMINARY STATEMENT

Defendants wholly ignore that New York Labor Law ("NYLL") § 652 explicitly states that "[e]very employer shall pay [the minimum wage] to each of its employees for **each hour worked**." (emphasis added).  Plaintiff Nick Oram's employment agreements specify that SoulCycle only compensated him "per class," and not for non-class related duties.  SoulCycle fails to account for the hours Mr. Oram spent on his SoulCycle duties outside of teaching classes, which amounted to 15 to 25 hours per week of additional work.  For these hours, Mr. Oram was not paid at all.  Accordingly, Mr. Oram has sufficiently pleaded that he was not paid any wage, let alone the minimum wage, for "each hour" he worked.

In fact, Mr. Oram was entitled to be paid far more than the minimum wage for these uncompensated hours.  Mr. Oram was entitled to be paid the proper wage for each hour he worked in accordance with the terms of his employment.  Even using Defendants' formulation of Mr. Oram's regular rate of pay, Mr. Oram was entitled to be paid at a minimum between $43 and $60 per hour for any hour spent performing tasks not covered by his class-rate/piece-rate of pay.

However, even that formulation improperly conflates Mr. Oram's non-class related duties with his class-rate. Therefore, Mr. Oram has sufficiently pleaded that Defendants failed to pay him the *proper* wages owed.

The NYLL also prohibits deductions from wages whether prospectively or retroactively. Requiring an employee to incur business expenses without reimbursement constitutes such a deduction and acts to reduce an employee's wages. During his tenure at SoulCycle, Mr. Oram was required to incur expenses without reimbursement for items including, but not limited to, MP3 players, ipods, music, CDs, computers, mixing software, and travel expenses. Accordingly, Mr. Oram has sufficiently pleaded unlawful wage deduction violations under NYLL § 193.

Moreover, after Mr. Oram filed the instant matter, SoulCycle retaliated against him and his attorney by banning them from all SoulCycle locations. Defendants do not even contest the causal relation between these events. These allegations constitute a sufficient pleading of retaliation under NYLL § 215.

Furthermore, there is ample basis for joining Mr. Oram's class claims against all Defendants in this action, including the SoulCycle locations in California at which he worked. To that end, Mr. Oram's Amended Complaint details that the above-described pay practices were common to all SoulCycle entities. Both in New York and California, Defendants failed to pay spin instructors for each non-class hour they worked and failed to reimburse them for necessary business expenses. Mr. Oram pleaded that he and his similarly situated colleagues were all subject to these unlawful company-wide wage practices. The New York and California claims are virtually identical in all respects, only with some slight variations in state law. Therefore, Mr. Oram's New York and California class claims are appropriately joined in a single action.

Finally, Defendants' contention that certain allegations in Plaintiff's complaint should be stricken has absolutely no legitimate basis. All of the allegations in Mr. Oram's complaint are highly relevant to this action and do not at all prejudice Defendants. Indeed, many of the objected-to allegations establish Defendants' intent in failing to comply with New York wage law, which directly relates to Mr. Oram's ability to recover liquidated damages. There is no requirement that a litigant draft a pleading in the driest and dullest possible fashion.

As such, Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

In or around April 16, 2009, Mr. Oram commenced employment with SoulCycle as one of the company's first spin instructors. AC ¶ 32.[1] Mr. Oram was recruited from California due to his strong following and reputation as a premiere spin instructor. *Id.* During his employment, Mr. Oram taught classes in numerous locations in New York and California, including, but not limited to, Tribeca, Upper East Side, Upper West Side, Union Square, NoHo, Scarsdale, Bridgehampton and East Hampton in New York and West Hollywood and Santa Monica in California. AC ¶ 35.

During Mr. Oram's employment at SoulCycle, he was paid strictly "**at [a] fixed rate . . . per class**" basis; that is, a flat rate for each class taught regardless of the length of the class. AC ¶ 38; Morris Aff. Ex. 1 (emphasis added). Generally, SoulCycle classes are approximately 45 minutes. AC ¶ 36. However, throughout his employment, Mr. Oram was required to not only lead spin classes, but also perform a variety of other tasks, including, but not limited to, training,

---

[1]     Amended Complaint referred to herein as "AC"; the Affidavit of Kevin S. Morris submitted by Defendants referred to herein as "Morris Aff."; and Defendants' Memorandum Of Law in Support of their motion is referred to herein as "Defs. Br."

preparing for classes, developing routines, compiling playlists, communicating with customers, attending meetings, leading special event classes and engaging in marketing. AC ¶ 37.

This per-class compensation was not intended to and did not compensate Mr. Oram for the time spent performing these other tasks. AC ¶ 39. Mr. Oram was not compensated in any manner for any of these other tasks that were required of him as a SoulCycle employee. *Id*.

Indeed, Mr. Oram's offer and salary review letters, which his employment contract incorporates by reference, clearly set his compensation "**at [a] fixed rate . . . per class**" and, by their express terms, provided remuneration for his in-class duties alone. Morris Aff. Ex. 1 (emphasis added).

Demonstrating SoulCycle's awareness of the additional duties required of spin instructors, Mr. Oram's contract lists the following tasks as part of his duties:

- [A]ttend regular staff meetings, CPR training and continuing education sessions;

- contribute to the Company's music library no less than one (1) play list compilation per month;

- offer content for the Company's website;

- be available for press at the Company's request; arrive no less than fifteen (15) minutes prior to assigned Classes in order to set up new riders for the Class;

- keep the Company informed of any difficulties encountered in promptly and satisfactorily providing the services pursuant to this Agreement.

*Id*. Moreover, the contract includes a catch-all which would arguably cover any other tasks SoulCycle would ask Mr. Oram to perform:

- perform such additional services as are required in order to comply with policies and procedures established by the Company during Employment, as set forth in employee manuals, instruction manuals, and the like.

4

*Id.* While Mr. Oram's contract states that these additional tasks will be compensated in accordance with his offer letter, as explained above, the offer letter expressly limits the compensation terms to a per-class rate and does not set forth the compensation terms for the non-class duties.

Mr. Oram was also required to incur business expenses during his employment at SoulCycle for items necessary to perform his job, including, but not limited to, MP3 players, ipods, music, CDs, computers, mixing software, and travel expenses. AC ¶ 40. Mr. Oram was never reimbursed for these business expenses. *Id.*

Mr. Oram's employment with SoulCycle ended on or around April 15, 2013. AC ¶ 32. On May 2, 2013, Plaintiff filed this action against SoulCycle alleging violations of the NYLL and California state law. AC ¶ 33. Within weeks of filing, on May 2, 2013, both Plaintiff and his counsel, Douglas Wigdor, were explicitly told that they were banned from SoulCycle. AC ¶ 34. This retaliatory action was intended to and did penalize and dissuade Plaintiff, employees and former employees for raising complaints regarding Defendants' unlawful wage practices in violation of the NYLL and for instituting this action. AC ¶¶ 49-50.

## ARGUMENT

## I.   MR. ORAM HAS PROPERLY PLEADED VIOLATIONS OF THE NEW YORK LABOR LAW

### A.   Standard on Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) states that a claim will be dismissed if it "fail[s] to state a claim upon which relief can be granted." In order to state a claim for relief, FRCP 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Importantly, FRCP 8 does not require "detailed factual allegations," but only that the statements in the

complaint make the claimed violation of law "plausible on its face." *Id*, 550 U.S. at 570.  This "plausibility" standard is satisfied by a complaint that contains enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556).  Of course, on a motion to dismiss, a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  Here, Mr. Oram's pleading undoubtedly satisfies these modest requirements.

**B.      Defendants Failed to Pay the Minimum Wage for Each Hour Worked**

NYLL § 652 specifically states that "[e]very employer shall pay [the minimum wage] to each of its employees for **each hour worked**." (emphasis added).  Therefore, to properly plead a minimum wage violation of the New York labor law, Mr. Oram need only allege that SoulCycle failed to pay him the minimum wage for each hour he worked.  *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 122 (E.D.N.Y. 2011) ("Because the Complaint alleges that 'Defendants willfully violated plaintiffs' rights by failing to pay plaintiffs the minimum wage for all hours of work performed each week,' Plaintiffs have adequately pleaded a violation of N.Y. Labor Law § 652."); *Thomas v. Meyers Associates, L.P.*, 39 Misc.3d 1217(A), Slip Copy, 2013 WL 1777483, at *9 (N.Y. Sup. April 18, 2013) ("Article 19 (Minimum Wage Act), Section 652, requires the payment of a specified minimum wage 'for each hour worked.'").

Mr. Oram's Amended Complaint easily meets this threshold, as he alleged that SoulCycle failed to compensate him for the 15-25 hours each week he spent on non-teaching duties.  As stated above, Mr. Oram's offer letter provides that his compensation was at a "fixed rate . . . per class," and did not provide any compensation for the hours worked performing other job functions, including those specifically referenced, and others not referenced, in his employment

contract.  By not compensating Mr. Oram for these non-class hours, Defendants failed to

compensate Mr. Oram for "each hour" worked.

Nevertheless, Defendants insist that the NYLL "does not require that employees be paid

by the hour, only that the total wages paid to the employee are greater to the total sum of the

applicable minimum wage rate times the number of hours worked by the employee."  Defs.  Br.

at 11.  However, this self-serving formulation misstates the express requirements of the NYLL

that requires minimum wage be paid for "each hour" worked.  In fact, despite this explicit

statutory language, Defendants wholly ignore and do not even cite this standard in their brief.

Plaintiff acknowledges that there is scant case law on how the minimum wage is

calculated under the NYLL.  As the sole authority to establish this principle, Defendants rely on

*Severin v. Project Ohr, Inc.*, 10 Civ. 9696 (DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012).

In pertinent part, the district court in *Severin*, without citing any authority, giving any

explanation or providing any analysis, merely divided the daily wages of the putative class

members by the number of compensable hours they worked to determine their hourly wage.  *Id.*

While Plaintiff acknowledges that courts engage in this calculation when determining minimum

wage violations under the Fair Labor Standards Act ("FLSA"), there is no authority for the

proposition that the minimum wage provision of the NYLL is interpreted the same way.  To the

contrary, the express "each hour" language of the NYLL defies such an interpretation and the

*Severin* court cited no legal authority for this holding.  Thus, Defendants have failed to

demonstrate that NYLL § 652 should not be read according to its plain terms, which explicitly

require that employees be compensated for "each hour" they work.

California courts have addressed this issue, and their reasoning is persuasive, as the

NYLL and California minimum wage laws are nearly identical.  In fact, the language of the

statutes and regulations governing the payment of wages in both states requires that employees be compensated for each and every hour they work. *Compare* Cal. Code Regs., tit. 8, § 11040, subd. (4)(B) ("Every employer shall pay to each employee, on the established payday period involved, not less than the applicable minimum wage for **all hours worked** in the payroll period, whether the remuneration is measured by time, piece, commission or otherwise.") (emphasis added), *with* NYLL § 652 ("Every employer shall pay [the minimum wage] to each of its employees for **each hour worked**.") (emphasis added). Clearly, to the extent either rule permits minimum wage to be based on "all hours worked" rather than "each hour worked," it would be California law rather than New York law.

Nonetheless, California courts uniformly require employers to pay employees for each hour worked and do not conduct the analysis suggested by Defendants herein. For instance, in *Cardenas v. McLane Food Services, Inc.*, 796 F.Supp.2d 1246, 1249 (C.D. Cal. 2011), the court found that the defendants were required to compensate employees for each hour they worked pre- and post-shift, even though the plaintiffs were "paid significantly more than the minimum wage for all of their working time." *See also, e.g., Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 47 (Cal. Dist. Ct. App. 2013) (holding that mere fact that employees were paid on a piece-rate basis did not absolve employers from California's requirement to pay employees the minimum wage for "each and every" hour worked); *Ontiveros v. Zamora*, CIV S-08-567LKK/DAD, 2009 WL 425962 at *3 (E.D. Cal. Feb. 20, 2009) ("an employer who uses an averaging method to determine employees' hourly wages may violate the state minimum wage law, because the law requires employees to be paid for each hour worked."); *Armenta v. Osmose, Inc.*, 37 Cal. Rptr. 3d 460, 467 (Cal. Dist. Ct. App. 2005) (California law is "inten[ded] to ensure that employees be compensated at the minimum wage for each hour worked. The averaging

method utilized by the federal courts for assessing a violation of the federal minimum wage law does not apply here.").

In sum, Plaintiff has adequately pleaded a minimum wage violation under NYLL § 652 because he was not paid the minimum wage for "**each hour worked**."  At the pleading stage, no further inquiry is necessary.

### C.     Defendants Failed to Pay Plaintiff a Proper Wage for Each Hour Worked in Violation of NYLL §§ 191 and 193

Pursuant to NYLL § 191(1)(a), an employer is required to pay its employees' earned wages in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.  Moreover, under NYLL §193, it is unlawful for employers to make wage deductions without, *inter alia*, written and informed employee consent.

Mr. Oram has sufficiently pleaded that Mr. Oram was not paid any wages at all for the hours he worked that were not covered by the class-rate, and therefore he was not timely paid for those hours as required under NYLL § 191.  *See Wing Kwong Ho v. Target Const. of NY, Corp.*, No. 08 Civ. 4750 (KAM)(RER), 2011 WL 1131510 at *14 (E.D.N.Y. March 28, 2011) (holding that failure to pay wages constitutes a violation of NYLL § 191 and plaintiff can "recover for all unpaid wages at the promised rate of pay"); *Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689(LLS)(FM), 2012 WL 3339220 (S.D.N.Y. Aug. 15, 2012) (holding that a failure to pay wages constituted a violation of NYLL § 191 and that plaintiff was entitled to recover the amount provided by agreed-upon terms of his employment).

Mr. Oram has also sufficiently pleaded that Defendants' failure to make any wage payments for the hours worked constitutes an unlawful wage deduction in violation of NYLL § 193.  *See, e.g., Farricker v. Penson Dev., Inc.*, 07 Civ. 11191 (DAB), 2009 WL 860239, *8

9

(S.D.N.Y. Mar. 31, 2009) (denying motion to dismiss NYLL § 193 claims based on failure to pay wages, holding that plaintiff properly alleged that defendant made an unlawful deduction from his wages in violation of NYLL Section 193); *Aledia v. HSH Nordbank AG*, 08 Civ. 4342, 2009 WL 855951, at *3 (S.D.N.Y. Mar. 25, 2009) (denying defendant's motion to dismiss plaintiff's NYLL § 193 claim for failure to pay wages); *Wachter v. Kim*, 920 N.Y.S.2d 66, 71-72 (1st Dep't 2011) (reversing dismissal of plaintiff's NYLL § 193 claims for employer's failure to pay earned compensation).

The Amended Complaint states that Defendants unlawfully failed to timely pay and unlawfully deducted wages by not paying *any* wages – not merely the minimum wage – for non-class time hours. Again, Mr. Oram's offer letter provides that his compensation was at a "fixed rate . . . per class," and did not provide any compensation for the hours worked performing other non-class job functions. For these hours, Mr. Oram is entitled to be paid his regular hourly rate.

Moreover, as a practical matter, Defendants cannot use a "piece rate" of pay to compensate its employees, without specifically identifying the task or tasks that must be completed to earn the "piece rate." Plaintiff contends that "piece rate" was specified to class-time work only. However, Defendants contend the "piece rate" covered (i) class-time work, (ii) non-class time work specified in the contract, and (iii) non-class work not specified in the contract but covered by a catch-all provision. Defendants' contention flies in the face of the concept of a bona fide "piece rate."

California law is also persuasive on the use of "piece rate" by employers. The California Department of Labor Standards Enforcement ("DLSE") Policies and Interpretations Manual defines "piece rate" as follows:

> Piece Rate or "Piece Work". "Work paid for according to the number of units turned out." (AMERICAN HERITAGE DICTIONARY definition.)

10

> Consequently, a piece rate must be based upon an **ascertainable** figure paid for **completing a particular task or making a particular piece of goods.**

DLSE § 2.5.1 (emphasis added).  Moreover, DLSE § 2.5.2 provides the following:

> [e]xamples of piece rate plans []: 1. Automobile mechanics paid on a "book rate" (i.e., brake job, one hour and fifty minutes, tune-up, one hour, etc.) usually based on the Chilton Manual or similar; 2. Nurses paid on the basis of the number of procedures performed; 3. Carpet layer paid by the yard of carpet laid; 4. Technician paid by the number of telephones installed; 5. Factory worker paid by the widget completed; 6. Carpenter paid by the linear foot on framing job.

Each of the above-referenced tasks, similar to teaching a spin class, is a discrete and identifiable task.  The DLSE does not provide, for instance, that a piece rate for a factory worker to complete widgets may include tasks completely foreign to the widget-making process, such as the marketing of widgets, communicating with customers, attending company meetings, not to mention a potential catch-all provision.  This flips the concept of a "piece rate" on its head, and leaves the employer with complete discretion to determine what needs to be completed in order for the "piece rate" to have been earned.

Although Plaintiff wholly denies that Defendants properly paid him the minimum wage for each hour worked, in that section of Defendants' brief, Defendants estimate Mr. Oram's regular rate of pay at between $43 and $60 per hour.  Defs. Br. at 14.  Moreover, under N.Y.C.R.R. § 142-2.16, Mr. Oram's regular hourly wage should "be determined by dividing the total hours worked during the week into the employee's total earnings."  Per the terms of Mr. Oram's contract and offer letter, this would be calculated by dividing the time spent *teaching classes* each week into his total weekly earnings.

Defendants confuse this cause of action, attempting to conflate it with Plaintiff's cause of action for minimum wage.  On the one hand, Defendants recognize that Plaintiff maintains a

11

cause of action based on the allegation that he was "not paid a ***proper*** wage for his non-class

time work. Defs. Br. at 14 (emphasis added).  On the other hand, in the following sentence,

Defendants claim that this cause of action must be dismissed because Plaintiff has "not

adequately pled that he was not paid the appropriate ***minimum*** wage." Defs. Br. at 14 (emphasis

added).  Defendants do not even attempt to reconcile how a failure to pay minimum wage

renders moot a failure to pay a proper wage.  Defendants do not cite any case law for the

proposition that the rate of pay for Plaintiff's uncompensated hours should be limited to the

applicable minimum wage.

Mr. Oram has sufficiently pleaded that SoulCycle failed to pay him the proper wage

according to the terms of his employment with the requisite frequency in violation of Section

191 and that the failure to pay him all such wages constitutes an unlawful wage deduction in

violation of Section 193.  Mr. Oram alleged that SoulCycle only compensated him on a per class

basis exclusively for teaching spin classes.  Therefore, Defendants' motion to dismiss Plaintiff's

causes of action for failure to pay wages should be denied.

### D.      Defendants Improperly Deducted Business Expenses in Violation of New York Law

NYLL § 193 mandates that "[n]o employer shall make any charge against wages, or

**require an employee to make any payment by separate transaction** unless such charge or

payment is permitted as a deduction from wages under the provisions of subdivision one of this

section." (emphasis added).  The failure to reimburse business expenses qualifies as a deduction

under this provision. *See Maldonado v. La Nueva Rampa, Inc.*, 10 Civ. 8195 (LLS)(JLC) 2012

WL 1669341 (S.D.N.Y. May 14, 2012) (failure to reimburse required business expenses for

bicycles, helmets, chains, and bicycle locks violated the NYLL § 193).  Mr. Oram has properly

pleaded that SoulCycle required him to incur business expenses, including, but not limited to,

MP3 players, ipods, music, CDs, computers, mixing software, and travel expenses, but subsequently failed to reimburse him.  Accordingly, Mr. Oram has stated a plausible claim for relief under NYLL § 193.

Moreover, further explicating the legal parameters governing wage deductions in New York, N.Y.C.R.R. § 142-3.11 explicitly states:

> (a) **Wages shall be subject to no deductions**, except for allowances authorized in this Part, and except for deductions authorized or required by law.
>
> (b) The minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer.

(emphasis added).  The fact that these protections are enumerated separately provides insight into how they should be read.  Specifically, the regulation protects: (1) against any non-authorized deductions for business expenses; and (2) against any deductions, including authorized deductions, which reduce employees' wages below the minimum wage.  In other words, the protection against deductions in section (b) does not obviate the blanket protection against non-exempt deductions provided by section (a).  As such, employers plainly may not deduct required business expenses from wages under New York law.

Nonetheless, citing no pertinent authority, Defendants contend that "under New York whether or not an employer must reimburse business expenses is dependent in part on whether or not the expenditures reduce the plaintiff's pay below that of the minimum."  Defs. Br. at 2.  Defendants rely on *Lin v. Benihana Nat'l Corp.*, 755 F.Supp.2d 504 (S.D.N.Y. 2010) to purportedly establish this proposition.  The *Lin* court, based on a on a now-repealed, inapplicable restaurant-industry wage regulation, held that the "NYLL allow employers to shift the cost of uniform purchase and maintenance to employees as long as doing so does not reduce the employee's wage below the minimum wage."  *Id.* at 511.  The regulation the court cited, which

governed deductions of costs for required uniforms from restaurant employees' wages, stated, "No allowance for the supply, maintenance, or laundering of required uniforms shall be permitted as part of the minimum wage." *Id.* at 511.  However, the current iteration of the regulation in question sets forth:

> Where an employer does not maintain required uniforms for any employee, the employer shall pay the employee, in addition to the employee's agreed rate of pay, uniform maintenance . . . .

12 N.Y.C.R.R. 146-1.7(a).  Moreover, the regulation establishes that it applies to all employees, **"regardless of a given employee's regular rate of pay."** 12 N.Y.C.R.R. 146-1.7(e) (emphasis added).  As such, the Department of Labor revised its understanding of the NYLL's requirements for uniforms in line with Mr. Oram's interpretation here; namely, that no deductions for required business expenses are permissible under New York law.

Moreover, as their only additional proof, Defendants disingenuously contend that *Maldonado* held "that employees could recover the costs of their equipment and repairs because such costs dropped the employees below the minimum wage." Defs. Br. at 16.  The court never stated that the fact that the plaintiffs' wages had been reduced below the minimum wage was dispositive; rather, the court observed that, under the facts presented there, the plaintiffs' wages had been reduced below the minimum wage in violation of 12 NYCRR § 142–2.10(b).  *Id.* at *8. Of course, as described above, the protections of this section (b) of this regulation exist in addition to those of section (a), which prohibits any non-exempt deductions. *Id.*  Indeed, the court in *Maldonado* also found that a deduction from a plaintiff's wages after he was robbed was unlawful (without any reference to the minimum wage whatsoever) merely because it shifted the "risk of loss" from the employer to the employee. *Id.*

14

### E.      Mr. Oram Has Sufficiently Alleged Retaliation

NYLL § 215 provides broad protections against retaliation:

> No employer or his agent, or the officer or agent of any corporation, shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that the employer has violated any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter, or because such employee has testified or is about to testify in an investigation or proceeding under this chapter.

Mr. Oram has pleaded that SoulCycle retaliated against him and his attorney by banning them from all SoulCycle locations because he filed the instant matter.  Defendants do not – because they cannot – even contest this causation, or the fact that it was intended to penalize Mr. Oram.

Defendants only assert a technical defense that Mr. Oram is not entitled to the protections of Section 215 because he was a former employee when SoulCycle retailed against him.  However, former employees are covered by NYLL §215.  *See Liverpool v. Con-Way, Inc.*, 08 Civ. 4076 (JG)(JO), 2009 WL 1362965 (E.D.N.Y. May 15, 2009).  In *Liverpool*, the court correctly found that NYLL § 215 paralleled state and federal antidiscrimination law in covering former employees.  *Id.* at *11; *see also Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997) (finding former employees covered under Title VII because a failure to do so would conflict with "a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms"); *Boland v. Town of Newington*, No. 3:05 Civ. 01739 (VLB), 2007 WL 2071630, at *2 (D.Conn. July 16, 2007) (holding former employees protected against retaliation under the ADEA); *Ballen–Stier v. Hahn & Hessen, L.L.P.*, 727 N.Y.S.2d 421, 422 (1st Dep't 2001) (noting that "the term 'employee' as used in the [New York State and City] anti-discrimination statutes encompasses former employees").

Defendants claim that, as part of a prima facie case of retaliation under NYLL § 215, a plaintiff must plead that a protected activity and retaliation must have occurred while an employee was "employed by the defendant."  In *Liverpool*, the court flatly rejected this statement of the law as "unpersuasive," as it failed to provide any explanation for its chosen definition of an employee.   Rather, in concluding that NYLL § 215 covers former employees, the court noted the absurd results that flow from Defendants' proffered definition:

> [T]he right-to-sue provision of Section 215(2) provides that "[a]n employee may bring a civil action" against an employer who violates this section. This language strongly suggests that the term employee in this section includes former employees. If it did not, an employee who was discharged for filing a complaint against his employer for a Labor Law violation would not have a right of action under the law. This cannot be the intent of the statutory provision, as a wrongful discharge is the archetypal example of the kind of adverse action retaliation provisions are drafted to prevent.

*Liverpool*, 2009 WL 1362965, at *12.  Accordingly, Mr. Oram, as a former employee pursuing wage and hour claims, is entitled to the protections of the anti-retaliation provision of the NYLL.

Furthermore, as Defendants correctly note, in the context of NYLL § 215, an adverse action is one that "might have dissuaded a reasonable worker from making or supporting similar charges." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 303 (S.D.N.Y. 2011). Courts have routinely held that this definition encompasses a broad range of retaliatory acts, including those not traditionally implicated in an employer-employee relationship. *See, e.g., Kreinik v. Showbran Photo, Inc.*, No. 02 Civ.1172 (RMB)(DF), 2003 WL 22339268 at *9 (S.D.N.Y. Oct.14, 2003) (defendant's filing of counterclaims constituted sufficient adverse employment action under § 215 because "counterclaims asserted against [plaintiff] could harm his reputation in his industry and negatively affect his prospective employment or business opportunities"); *Electchester Hous. Project, Inc. v. Rosa*, 639 N.Y.S.2d 848, 849 (2d Dep't 1996)

(under similar provision in New York Executive Law, contesting of plaintiff's unemployment benefits after plaintiff filed a complaint with State Division of Human Rights constituted retaliation); *Castagna v. Luceno*, 09 Civ. 9332 CS, 2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011) ("employment actions less severe than outright termination may . . . serve as the basis for a valid Section 215 claim").  Given the broad range of retaliatory conduct covered by NYLL § 215, SoulCycle's decision to ban Mr. Oram and his attorneys surely qualifies as such.

Indeed, in the present situation, SoulCycle made the explicit decision to ban Mr. Oram from entering their premises and availing himself of their services in retaliation for filing a wage claim. This was clearly intended to penalize Mr. Oram and his counsel from pursuing his claims. Taken to its logical conclusion, this sort of conduct would almost certainly have a chilling effect on employees availing themselves of their rights under the NYLL.  Just a few examples of the problems this would cause are detailed below:

- A former employee of a hospital could be faced with the decision of pursuing claims or being denied essential medical services;

- A former employee of Con Edison could be faced with the decision of pursuing claims or being denied gas and electricity;

- A former employee of a nearby pharmacy could be faced with the decision of pursuing claims or having to travel further to obtain essential medication;

- A former employee of a cable company could be faced with the decision of pursuing claims or being able to watch television;

- A former employee of a bank could be faced with the decision of pursuing claims or placing savings in the bank that did not offer the best interest rates or account options.

Defendants may argue that the above examples are not comparable to being banned from SoulCycle because attending spin classes is not a vital service.  Such an argument would miss the mark entirely.  At best, this argument is still an admission of retaliation akin to stating: "our

17

retaliation is not as bad as those other forms of retaliation." Moreover, it cannot be disputed that being "banned" from a popular place of business is both humiliating and degrading, and might deter individuals from asserting their rights. Defendants' decision to ban Mr. Oram from SoulCycle was clearly intended to "penalize" him for bringing these claims.

Similarly, allowing employers to penalize employees' attorneys would have a chilling effect, as such a policy would discourage attorneys from representing employees to the extent it may create inconvenience or otherwise detriment their lives. Indeed, the Rules of Professional Conduct prohibit lawyers from restricting their right to practice because doing so would "limit[] the freedom of clients to choose a lawyer." Model Rules of Professional Conduct R. 5.6, Comment 1 (2013). Allowing employers to retaliate against employees' attorneys would have a similar effect of limiting their pool of available lawyers. Thus, both common sense and the available legal authority militate in favor of permitting Mr. Oram to proceed with his claim.

## II.     THERE IS NO BASIS FOR SEVERING THE CALIFORNIA CLASS

In determining whether parties are properly joined under Rule 21 of the Federal Rules of Civil Procedure, courts consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Erausquin v. Notz, Stucki Management (Bermuda) Ltd.*, 806 F.Supp.2d 712, 720 (S.D.N.Y. 2011). "The Federal courts view severance as a 'procedural device to be employed only in exceptional circumstances.'" *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, No. 99 CIV 0682 (RWS), 2001 WL 963943, *1 (S.D.N.Y. August 23, 2001).

18

Here, Defendants argue that the "claims of the putative California and New York classes do not share common questions of law or fact, witnesses or documents." Defs. Br. at 7. As demonstrated below, because SoulCycle employs uniform policies both in California and New York that underlie all of Mr. Oram's claims, resulting in common facts, law, witnesses and documents, the New York and California classes are properly joined.

### A.     The Claims Arise out of the Same Transaction

For Rule 21 analysis, the facts and circumstances underlying a lawsuit must arise from the same "transaction or occurrence." To qualify as a "transaction," the facts and circumstances underlying the claims in a lawsuit must be "logically related." *Baergas v. City of New York,* No. 04CIV2944 (BSJ)(HBP), 2005 WL 2105550, at *4 (S.D.N.Y. Sept. 1, 2005). "[A] transaction . . . may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id*; *see also In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288 (DLC), 2003 WL 1563412, at *3 (S.D.N.Y. March 25, 2003) (observing that Rule 21 "permit[s] all logically related claims by or against different parties to be tried in a single proceeding."). Courts determine logical relation "on a case-by-case basis." *Deskovic v. City of Peekskill*, 673 F.Supp.2d 154, 166 (S.D.N.Y. 2009) (quoting *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008).

While inquiries as to whether claims arise from the same transaction are case specific, "the same transaction or occurrence factor routinely has been found to exist where employee plaintiffs with varying factual circumstances allege the common denominator of a policy or practice . . . ." *Gerace v. Cliffstar Corp.*, No. 05 Civ. 65S (WMS), 2009 WL 5042621(W.D.N.Y. Dec. 15, 2009); *see also Fong v. Rego Park Nursing Home*, No. 95 Civ 4445 (SJ), 1996 WL 468660 (E.D.N.Y. Aug. 7, 1996) (finding that plaintiffs' claims related to the

same transaction where they were based on a common "pattern of severe disciplinary measures"); *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1422 (S.D.N.Y. 1989) (holding claims arose out of the same transaction where "[a] company-wide policy purportedly designed to discriminate against females in employment arises out of the same series of transaction or occurrences"); *see also Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1421(4th Cir. 1991) (holding plaintiffs' claims arose out of the same transaction where they were based on "a uniform policy adopted for selecting employees for discharge."); *Mosley v. General Motors Corp*, 497 F.2d 1330, 1333-1334 (8th Cir. 1974) (finding transaction factor satisfied where ten plaintiffs brought individual Title VII claims together against their employer based on a company-wide policy).

As discussed, Mr. Oram has alleged that SoulCycle engaged in a policy of systematically failing to compensate its spin instructors in California and New York for each hour worked, which resulted in "approximately 15 to 25 hours per week on uncompensated tasks," and required all of its spin instructors to their own money on business expenses without providing reimbursement.  Accordingly, the circumstances and facts of Mr. Oram's claims, which are common to both the California and New York classes, qualify as the same "transaction."

**B.     The Claims Present Common Questions of Law and Fact**

Rule 20(a) "provides for a joinder of parties if there is **any** question of law **or** fact common to all." *Blesedell*, 708 F.Supp. at 1422 (emphasis added).  Rule 20 does "not require that all questions of law and fact raised by the dispute be common." *Id.* (emphasis added).

Defendants do not dispute that Mr. Oram was paid exactly the same manner for working in New York and California or that he was not reimbursed for his business expenses in either state.  Moreover, as established *supra*, the same facts, which are not tied to any location, but

rather, uniform, company-wide policies, serve as the common basis of all of Mr. Oram's claims.[2]

Additionally, as discussed further *supra*, the NYLL and California wage laws are nearly

identical.  Accordingly, although Mr. Oram need only demonstrate that his New York and

California claims share a similar factual **or** legal basis, they, in fact, share both.  *Id.*

Defendants cite various out-of-district cases for the proposition that Mr. Oram's

California claims should be severed because they are governed by California state law, whereas

Mr. Oram's New York claims are governed by New York state law.  These cases are wholly

unavailing.  *Wilkes v. Genzyme Corp* Civ. No. WMN-10-1683 at p. 3-5, 2011 U.S. Dist. LEXIS

49881 (D. Md. May 10, 2011)(severing where applying six different labor laws from six

different states, three of which did not even have labor laws, could lead to jury confusion);

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (severing because ten

plaintiffs from six different states); *Boschert v. Pfizer, Inc.*, No. 4:08 Civ. 1714 CAS, 2009 U.S.

Dist. Lexis 41261 (E.D. Mo. May 14, 2009) (severing because the claims involved "four

different sets of jury instructions from four different states" based on ten separate state law

claims, where the only link was plaintiffs took the same pharmaceutical drug).  Here, however,

Plaintiff confines his allegations to the two different states in which he personally performed

services for SoulCycle under their entirely similar wage laws.

In fact, courts routinely apply two sets of laws in wage claims in the same action, such as

the FLSA and corresponding state wage law.  As such, an analogous factual scenario was

presented in *Dare v. Comcast Corp*, No. 09–4175 (NLH)(JS), 2010 WL 2557678 (D.N.J. June

23, 2010).  There, plaintiffs sought to sever wage claims arising from the same "set of core facts"

---

[2]    Defendants argue that "Plaintiff has made no allegation that all putative plaintiffs were
subject to the same contract."  Of course, Plaintiff has made no contract claims in the present
matter.  Rather, he has alleged that all putative plaintiffs were subject to the same unlawful wage
practices during their employment at SoulCycle.  *See* AC ¶¶ 41-47.

under New Jersey state law and the FLSA. *Id* at *1. The court found that, due to the common facts that formed the basis of the claims, "severance of the state claims would require the parties to litigate parallel cases with duplicative discovery, thereby frustrating judicial economy." *Id.* *See also In re Digital Music*, 812 F. Supp. 2d 390, 396 (S.D.N.Y. 2011) (holding that claims brought under the antitrust laws of fourteen other states and the District of Columbia could proceed because the conduct was alleged to be the same no matter where any plaintiff resided).

Defendants suggest that because the New York and California class claims are governed by different laws, the possibility of jury confusion exists. Defendants cannot meet the substantial burden necessary to sustain this argument, as "there is a presumption that jurors will follow the Court's instructions." *Todaro v. Siegel Fenchel & Peddy, P.C.*, No. 04 Civ. 2939 (JS)(WDW), 2008 WL 682596 (E.D.N.Y. March 3, 2008) (declining to sever where defendants argued trying two individual discrimination-related claims at the same time would cause jury confusion); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (explaining generally the "assumption of the law that jurors follow their instructions"). Indeed, many courts have found that "any prejudice or confusion [that might occur from trying Plaintiffs' claims before a single jury] can be remedied by a carefully drafted jury instruction." *Epstein v. Kemper Ins. Companies*, 210 F.Supp.2d 308, 320 (S.D.N.Y. 2002) (declining to sever where four plaintiffs brought individual discrimination claims together). What is more, as detailed *supra*, Mr. Oram only must demonstrate that the claims of the California class share a common question of fact *or* law to satisfy this factor for purposes of Rule 21 analysis. Mr. Oram has undeniably met his modest burden.

### C.   Different Witnesses and Documentary Proof are Not Required for the New York and California Claims

Courts have routinely observed that "[n]early every trial involving multiple defendants will involve some separate issues of fact that call for testimony from different witnesses on

entirely unrelated matters." *Lewis v. Triborough Bridge & Tunnel Auth.,* 97 Civ. 0607 (PKL), 2000 WL 423517 (S.D.N.Y. Apr. 19, 2000). Instead, "[t]he more appropriate question . . . is whether separate trials will require substantial overlap of witnesses or documentary proof." *Id.*

Mr. Oram's allegations involve the uniform, company-wide pay practices at SoulCycle, which apply regardless of location, including in California and New York. Any proof regarding these practices necessarily involves a substantial overlap of witnesses and documentary evidence with respect to the California and New York classes. *See id.* at *4 (noting "significant evidentiary overlap" where defendants "would likely call the same witnesses and introduce the same documents to explain the [company-wide] practices and procedures it employs . . .").

Nevertheless, Defendants suggest that "it is likely to assume that putative plaintiffs, witnesses and documents relevant to the California claims are located in California." Defs. Br. at 9. Since the parties have not undertaken discovery, this argument can only be based on self-serving speculation. To the contrary, given the common factual basis of Mr. Oram's claims and that discovery has not yet begun, "discovery . . . would have to be duplicated if the actions were severed." *Laureano v. Goord*, No. 06 Civ. 7845(SHS)(RLE), 2007 WL 2826649 (S.D.N.Y. Aug.31, 2007); *see also Dare,* WL 2557678, at *1. Judicial economy would be fostered by keeping Mr. Oram's claims together. Moreover, Defendants will not be prejudiced by trying Mr. Oram's New York and California claims together as "[s]ingle trials generally tend to lessen the delay, expense and inconvenience to all concerned." *Mosley*, 497 F.2d at 1332.

Moreover, here, the California Defendants are subsidiaries of SoulCycle, whose general pay practices are at issue. *See In re Neurontin Marketing and Sales Practices Litigation,* 810 F.Supp.2d 366 (D. Mass. 2011) (finding that defendants would not be prejudiced by joining six regional subsidiaries of a company as plaintiffs *after* an entry of judgment). Accordingly, to the

extent any characterization of Mr. Oram's documentary proof of witnesses can be made before

discovery, Mr. Oram has demonstrated that SoulCycle's common wage policies underlie all of

his claims and that judicial economy will be fostered by trying them together.

**III.**   **NO PORTION OF THE AMENDED COMPLAINT SHOULD BE STRICKEN**

Allegations that contain "[r]edundant, impertinent, or scandalous matter" may be

stricken. FRCP 12(f).  However,"[r]egardless of whatever bad intentions the Defendants contend

motivated the Plaintiff . . . , even allegations that may not pass Rule 11 scrutiny at a later stage

in the litigation will not be stricken if they have some possible bearing on the subject matter of

the plaintiff's claim." *Lynch v. Southampton Animal Shelter Foundation Inc.*, *et al.*, 278 F.R.D.

55 (2011).  Moreover, "motions to strike are generally disfavored, and should be granted only

when there is a strong reason for doing so." *Winfield v. Citibank*, N. A., No. 10 Civ. 7304 (JGK)

2012 WL 266887 at * 9 (S.D.N.Y. January 30, 2012).

Simply put, Mr. Oram is under no obligation to conform all of the highly relevant

allegations in his complaint to Defendants' stylistic tastes or preferences.  *See Kehr ex rel. Kehr*

*v. Yamaha Motor Corp., U.S.A.*, 596 F.Supp.2d 821 (S.D.N.Y. 2008) (denying motion to strike

in spite of defendants' objections that the allegations were "narrative or contain[ed] generalized

statements or matters of opinion").  To that end, Defendants take issue with the following

statement in the Preliminary Statement of Mr. Oram's Amended Complaint:

- SoulCycle's wage and hour violations are 'spinning' out of control and this lawsuit attempts to 'hit the brakes' on these unlawful practices.

This allegation is relevant, and encapsulates the core of the claims levied in the instant matter:

Defendants systematically engaged in a course of unlawful wage practices.  Although

Defendants might prefer Mr. Oram's allegations be drafted in the dullest or driest possible

fashion, this allegation of the Amended Complaint simply creatively states the facts,

circumstances, and legal basis of Mr. Oram's claims.

Furthermore, Defendants object to Plaintiff's inclusion of the following:

- SoulCycle's unlawful wage practices are consistent with its mistreatment of customers –amazingly, SoulCycle does not provide any reimbursement to customers who are unable to attend classes they sign up for (unless they cancel the class by 5:00 pm the night before), even when SoulCycle is able to re-sell the vacant bike spot.  As a result, SoulCycle very often generates revenue from classes at a rate that exceeds the total number of bikes in a studio, to the detriment of its customers.

- However, while SoulCycle has built its highly successful and profitable business on the backs of the 'best instructors' in the industry . . .

Under the NYLL, a plaintiff is entitled to 100% liquidated damages for all unpaid wages. *See* §

198(1-a).  An employer can only avoid payment of liquidated damages if there is a good faith

basis to believe it was compliance with the law. *See id.*  Defendants' intent in failing to pay

Plaintiff and his similarly situated colleagues is therefore highly relevant to the present lawsuit.

The text of the first allegation explicitly draws this link, as it states, "SoulCycle's unlawful wage

practices are consistent with its mistreatment of customers . . . ."

Moreover, the following allegation notes that these wage violations enable SoulCycle to

profit at the expense of spin instructors, whom SoulCycle holds out as the best in their field but

fails to fairly compensate.  This context establishes the profit-driven intent behind SoulCycle's

unlawful wage practices.  SoulCycle's mistreatment of customers and failure to pay its spin

instructors wages both pertain to proving that SoulCycle did not have a good faith basis for their

wage practices.  Accordingly, "it cannot be said at this stage of the litigation that [these]

allegations have no bearing on the issues in the case or would prejudice [the Defendants]."

*S.E.C. v. Treadway*, No. 11 Civ. 1534, 2011 WL 2623469, at *2 (S.D.N.Y. June 29, 2011).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended

Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Sever Plaintiff's California Claims Pursuant to

Fed. R. Civ. P. 21, and Strike Portions of Plaintiff's Amended Complaint Pursuant to Fed. R.

Civ. P. 12(f), must be denied.

Dated: August 30, 2013
      New York, New York

Respectfully submitted,

THOMPSON WIGDOR LLP

By: _____
      Douglas H. Wigdor
      David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@thompsonwigdor.com
dgottlieb@thompsonwigdor.com

*Counsel for Plaintiff*