UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

NICK ORAM, on behalf of himself and on
behalf of all other similarly situated
persons,

                                    Plaintiff,          13 Civ. 2976

        -against-                                       OPINION

SOULCYCLE LLC, SOULCYCLE HOLDINGS LLC,
SOULCYCLE 384 LAFAYETTE STREET, LLC,
SOULCYCLE 350 AMSTERDAM, LLC, SOULCYCLE 609
GREENWICH STREET, LLC, SOULCYCLE
BRIDGEHAMPTON, LLC, SOULCYCLE EAST 18TH
STREET, LLC, SOULCYCLE EAST 63RD STREET,
LLC, SOULCYCLE EAST HAMPTON, LLC,
SOULCYCLE ROSLYN LLC, SOULCYCLE
SCARSDALE LLC, SOULCYCLE TRIBECA, LLC,
SOULCYCLE WEST 19TH STREET, LLC,
SOULCYCLE BRENTWOOD, LLC, SOULCYCLE SANTA
MONICA, LLC, AND SOULCYCLE WEST HOLLYWOOD,
LLC,

                                    Defendants.

------------------------------------------X

A P P E A R A N C E S:

            Attorneys for Plaintiff

            THOMPSON WIGDOR LLP
            85 Fifth Avenue
            New York, NY 10003
            By:  Douglas H. Wigdor, Esq.
                 David E. Gottlieb, Esq.

            Attorneys for Defendants

            JACKSON LEWIS LLP
            666 Third Avenue
            New York, NY 10017
            By:  William J. Anthony, Esq.
                 Joana S. Smith, Esq.

**Sweet, D.J.**

Defendants Soul Cycle LLC, Soul Cycle Holdings, LLC, SoulCycle 384 Lafayette Street, LLC, Soul Cycle 350 Amsterdam, LLC, Soul Cycle 609 Greenwich Street, LLC, SoulCycle Bridgehampton, LLC, SoulCycle East 18th Street, LLC, SoulCycle East 63rd Street, LLC, Soul Cycle East Hampton, LLC, SoulCycle Roslyn, LLC, SoulCycle Scarsdale, LLC, SoulCycle Tribeca, LLC, SoulCycle West 19th Street, LLC, SoulCycle Brentwood, LLC, SoulCycle Santa Monica, LLC, and SoulCycle West Hollywood, LLC (collectively hereinafter "Defendants" or "SoulCycle") have moved to sever the Plaintiff Nick Oram's ("Oram" or "Plaintiff") California Claims and Parties pursuant to Fed. R. Civ. P. 21, to dismiss the New York Claims in the Amended Complaint ("AC") pursuant to Fed. R. Civ. P.12(b)(6) ("Defendants' Motion") and to strike portions of the AC pursuant to Fed. R. Civ. P. 12(1). Upon the conclusions set forth below, the motion to sever is denied, the motion to dismiss is granted in part and denied in part, and the motion to strike is granted in part and denied in part.

1

**Prior Proceedings**

Oram filed his initial complaint in this putative class action on May 2, 2013. The Defendants moved to dismiss the Complaint and on July 2, 2013 Oram filed the AC, which contained the allegations described below.

Oram has alleged that he commenced employment with SoulCycle as an indoor cycling instructor on or about April 16, 2009 (AC ¶ 132) and that he taught classes at many SoulCycle locations, including but not limited to, Tribeca, Upper East Side, Upper West Side, Union Square, SoHo, Scarsdale, Bridgehampton and East Hampton in New York and Santa Monica and West Hollywood in California. (AC ¶ 35).

In addition to the classes he taught, Oram had to perform a variety of other tasks, including but not limited to, "training, preparing for classes, developing routines, compiling playlists, communicating with customers, attending meetings, leading special event classes and engaging in marketing." (AC ¶ 37). These tasks required an additional 15 to 25 hours per week of his time (AC ¶ 45) and he was not compensated for time spent on these additional tasks. (AC ¶ 39). Oram was paid

"strictly on a per class basis" (AC ¶ 38) and the rate he was
paid "far exceeded the minimum wage." (AC ¶ 88).

Oram also alleged that he was required to incur
business expenses for "items necessary to perform his job
including but not limited to MP3 players, ipods [sic], music,
CDs, computers, mixing software, and travel expenses" (AC ¶ 40)
and that he was never reimbursed for these business expenses.

Oram referenced the terms of his agreement with
Defendants in Paragraph 37 of his AC, but did not incorporate
any written agreements into the AC. (AC ¶ 37).

Oram's employment with SoulCycle ended on or about
April 15, 2013. (AC ¶ 32). Approximately three weeks after his
employment with Soul Cycle ended, on or about May 2, 2013,
Plaintiff filed his initial complaint (AC ¶ 33). Several weeks
after the filing of the initial complaint, both Plaintiff and
his counsel, Douglas Wigdor ("Wigdor"), were "explicitly told
that they were not permitted on SoulCycle's premises." (AC ¶
34).

The AC contains the First Claim for Relief (Failure to
Pay Minimum Wage in violation of NYLL § 650 et. seq. (AC ¶¶ 77-

3

83), the Second Claim for Relief (Failure to Pay Wages in violation of NYLL § 191) (AC ¶¶ 84-91), the Third Claim for Relief (Unlawful Deductions in violation of NYLL § 193 and 12 N.Y.C.R.R. § 142-2.10) (AC ¶¶ 92-100), the Fourth Cause of Action (Failure to provide Wage Statements under the NYLL) (AC ¶¶ 101-106), the Fifth Cause of Action (Failure to pay wages in violation of California Labor Code §§ 204, 223, 1194, 1194.2, 1197, 1197.1 and 1198 (AC ¶¶ 107-121), the Sixth Cause of Action (Failure to provide accurate wage statements in violation of California Labor Code § 226(A) (AC ¶¶ 121-129), the Seventh Cause of Action (Failure to reimburse expenses in violation of CLC §2802 (AC ¶¶ 130-134), the Eighth Cause of Action (Failure to timely pay all final wages in violation of CLC §§ 201-203) (AC ¶¶ 135-144), the Ninth Cause of Action (violations of the unfair competition and business Practices Act) (AC ¶¶ 145, 157), and the Tenth Cause of Action (retaliation in violation of NYLL § 215) (AC ¶¶ 158-163).

The instant motions were heard and marked fully submitted on September 28, 2013.

**The Motion To Sever The California Claims Is Denied At This Time**

A.   The Applicable Standard

4

Fed. R. Civ. P. Rule 21 provides that:

> Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Id. "[S]evered claims become entirely independent actions to be tried, and judgment entered thereon, independent." Cestone v. General Cigar Holdings, Inc., 00 Civ. 3688 (RCC)(DF), 2002 U.S. Dist. LEXIS 4504, *6 (S.D.N.Y. Mar. 18, 2002) (internal citation omitted). The trial court has broad discretion in determining whether to sever claims under Fed. R. Civ. P. Rule 21. Id. Courts in this Circuit consider the following factors in determining if severance is appropriate: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. Id. at *7. "Severance requires the presence of only one of these conditions." Id.; see also Erausquin v. Notz, Stucki Management (Bermuda) Ltd., 806 F. Supp.2d 712, 720 (S.D.N.Y. 2011). "The Federal courts view severance as a procedural device to be

5

employed only in exceptional circumstances." <u>Wausau Bus. Ins.</u>
<u>Co. v. Turner Constr. Co.</u>, No. 99 Civ. 0682, 2001 WL 963943, *1
(S.D.N.Y. August 23, 2001) (internal citations omitted).


B.    <u>Severance or Transfer is Premature</u>


As a threshold matter, Defendants have introduced
extrinsic evidence in the context of the motion to sever,
including the employment contract between Soul Cycle and Oram
("the Contract").  <u>See</u> <u>In re NYSE Specialists Sec. Litig.</u>, 503
F.3d 89, 95 (2d Cir. 2007) cert. denied, 552 U.S. 1291 (2008).
Consideration of Plaintiff's employment contract and related
documents are also appropriate with respect to the motion to
dismiss Plaintiff's NYLL claims as they are integral to the AC.
<u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir.
2002); <u>see also</u>, <u>Int'l Audiotext Network v. American Tel. & Tel.</u>
<u>Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995) (holding that a court may
take a document into consideration without converting a motion
to dismiss to a summary judgment motion, even if the document
was not attached to the complaint, when said document is
integral to the complaint).  It appears that Oram's employment
contract was entered into by Oram and Soul Cycle LLC, presumably
the parent company, as were the employment contracts of members
of the putative class.

The Defendants in arguing severance have pointed out that courts have often severed the claims of plaintiffs who reside and were injured out of the court's jurisdiction. See Costello v. Home Depot U.S.A., Inc., 888 F. Supp.2d 258, 264-66 (D.Conn. 2012) (finding that the relevant factors, including the substantial factual differences between the different plaintiffs, despite their sharing a job description, as well as concerns for jury confusion favored severance of non-Connecticut claims into separate actions). In Wilkes v. Genzyme Corp., Civ. No. WMN-10-1683, 2011 U.S. Dist. LEXIS 49881 (D. Mel. May 10, 2011), for instance, plaintiffs alleged wage and hour violations solely under state law, on behalf of plaintiffs who were employed by defendant in six different states.  The Maryland District Court in Wilkes severed the claims of all out-of-state plaintiffs and dismissed them from the case. Id. at *7-8, citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296-97 (9th Cir. 2000) (holding that the district court did not abuse its discretion when it severed the claims of three of the ten plaintiffs, as, among other reasons, not severing their claims would lead to potential prejudice to the defendants in part due to legal confusion as the jury would have had to evaluate state law claims under the differing laws of each plaintiff's state); see also Boschert v. Pfizer, Inc., No. 4:08-CV-1714(CAS), 2009

7

U.S. Dist. LEXIS 41261 (E.D. Mo. May 14, 2009) (granting severance of the non-resident state plaintiffs, in part because multiple sets of jury instructions would be required to encompass the laws from multiple states, and allowing the severed plaintiffs to re-file their separate complaints against the defendant in the court of their choosing, provided they could meet jurisdictional and venue requirements). The Defendants here have similarly noted the existence of the California Defendants and the differences between the statutes of California and New York, as well as the potential inconvenience to out of state Defendants and witnesses in this matter. (Memo in Support, p. 8-9).

It is at this early stage uncertain as to possible witnesses and documents out of state. No showing has been adduced concerning the putative class as to numbers, location and contracting parties. Further, courts, in appropriate instances, appropriately apply two sets of laws in wage claims in the same action, such as the FLSA and corresponding state wage law, without prejudice to any party. As such, an analogous factual scenario was presented in Dare v. Comcast Corp., No. 09-4175 (NLH)(JS), 2010 WL 2557678 (D.N.J. June 23, 2010). See also In re Digital Music, 812 F. Supp. 2d 390,396 (S.D.N.Y. 2011) (holding that claims brought under the antitrust laws of

fourteen other states and the District of Columbia could proceed because the conduct was alleged to be the same no matter where any plaintiff resided).

As to the possibility of jury confusion "there is a presumption that jurors will follow the Court's instructions." Todaro v. Siegel Fenchel & Peddy, P.C., No. 04 Civ. 2939 (JS)(WDW), 2008 WL 682596 (E.D.N.Y. March 3, 2008) (declining to sever where defendants argued trying two individual discrimination-related claims at the same time would cause jury confusion); Richardson v. Marsh, 481 U.S. 200,206 (1987) (explaining generally the "assumption of the law that jurors follow their instructions").  Indeed, many courts have found that "any prejudice or confusion [that might occur from trying plaintiffs' claims before a single jury] can be remedied by a carefully drafted jury instruction." Epstein v. Kemper Ins. Companies, 210 F. Supp.2d 308, 320 (S.D.N.Y. 2002) (declining to sever where four plaintiffs brought individual discrimination claims together).

In addition, courts often focus in determining if severance is appropriate on whether the claims arise out of the same transaction or occurrence.  While inquiries as to whether claims arise from the same transaction are case specific, "the

9

same transaction or occurrence factor routinely has been found
to exist where employee plaintiffs with varying factual
circumstances allege the common denominator of a policy or
practice . . . ." Gerace v. Cliffstar Corp., No. 05 Civ. 655
(WMS), 2009 WL 5042621 (W.D.N.Y. Dec. 15, 2009); see also Fong
v. Rego Park Nursing Home, No. 95 Civ 4445 (SJ), 1996 WL 468660
(E.D.N.Y. Aug. 7, 1996) (finding that plaintiffs' claims related
to the same transaction where they were based on a common
"pattern of severe disciplinary measures"); Blesedell v. Mobil
Oil Co., 708 F. Supp. 1408, 1422 (S.D.N.Y. 1989) (holding claims
arose out of the same transaction where "[a] company-wide policy
purportedly designed to discriminate against females in
employment arises out of the same series of transaction or
occurrences"); Duke v. Uniroyal Inc., 928 F.2d 1413, 1421(4th
Cir. 1991) (holding plaintiffs' claims arose out of the same
transaction where they were based on "a uniform policy adopted
for selecting employees for discharge."); Mosley v. General
Motors Corp., 497 F.2d 1330, 1333-1334 (8th Cir. 1974) (finding
transaction factor satisfied where ten plaintiffs brought
individual Title VII claims together against their employer
based on a company-wide policy).  Oram has adequately alleged
that the claims of the New York and California classes result
from a common practice of the Defendants.  (AC ¶ 6.)

10

Because of the uncertainty as to Defendants, third
party witnesses and documents at this time and based on the
authorities cited above, the motion to sever is denied without
prejudice to renewal or to a further motion to sever and
transfer.  See Martinez v. Robinson, No. 99 Civ.11911 (DAB),
2002 WL 424680, at *2 (S.D.N.Y. Mar.19, 2002) (denying severance
motion as premature because discovery had barely begun, and, as
a consequence, information necessary to evaluate the relevant
factors was not yet available); see also Cramer v. Fedco
Automotive Components Co., Inc., 2002 WL 1677694, at *2
(W.D.N.Y. July 18, 2002) (declining to grant severance motion
before discovery was completed).

**The First, Second And Third Causes Of Action Are Dismissed**

A.   The Appropriate Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6),
a court must accept the factual allegations made by the non-
moving party as true and "draw all inferences in the light most
favorable to the non-moving party's favor." In re NYSE
Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) cert.
denied 552 U.S. 1291 (2008). While the pleading standard is
flexible, it is not without boundaries. The court need not

11

"accord legal conclusions, deductions or opinions couched as factual allegations ... a presumption of truthfulness." Id. (internal citations omitted). Accordingly, legal conclusions "must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

   To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Desilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp.2d 497, 506 (E.D.N.Y. 2011) citing to Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 664. The factual allegations must instead "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557. Therefore, unless a plaintiffs well-pleaded allegations

12

have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; see also Iqbal, 556 U.S. at 680; Lundy, 711 F.3d at 115 (finding that plaintiffs sparse allegations which theoretically could put her over the 40-hour mark in one or another unspecified week(s) were insufficient to support her claims of overtime violations and "suppl[ied] nothing but low-octane fuel for speculation, not the plausible claim that is required.").

B.   The Plaintiff Has Not Adequately Alleged a
     Violation of New York Minimum Wage Requirements

In an action to recover unpaid wages under the NYLL, a plaintiff must show that (1) he was an "employee" as defined by the statute; (2) the defendant was his "employer" as defined by the statute; and (3) he was paid a wage of less than the applicable statutory minimum wage for each hour worked. See NYLL § 652.

The NYLL does not require that employees be paid by the hour, only that the total wages paid to the employee are equal or greater to the total sum of the applicable minimum wage rate times the number of hours worked by the employee. See NYLL § 190(1) (defining wages as "the earnings of an employee for labor services rendered, regardless of whether the amount of

13

earnings is determined on a time, piece, commission or other basis"); see also N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.16 ("The term regular rate shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece-work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings."); Severin v. Project OHR, Inc., 10 Civ. 9696 (DLC), 2012 U.S. Dist. LEXIS 85705, *35 (S.D.N.Y. Jun. 20, 2012) (finding that as putative plaintiffs in a class action were paid $136.95 for each shift totaling a potential 16 compensable hours, putative plaintiffs rate of compensation was $8.55 per hour which was greater than the applicable minimum wage rate).

The AC has alleged that the Plaintiff was paid not at an hourly rate but based on the number of classes he taught in each work week (AC ¶ 38), that the rate he was paid "far exceeded minimum wage" (AC ¶ 88) and that his duties included teaching classes, training, preparing for classes, compiling playlists, attending meetings, and communicating with customers (AC ¶ 37) and that he was not paid the minimum wage for performing these duties outside the classes he taught.  (AC ¶ 39.)

14

However, to survive a motion to dismiss, Plaintiff's claim for minimum wage violations under the NYLL must be supported by factual allegations sufficient to establish that his weekly per class rate divided by his hours worked fell under that of the applicable minimum wage for specified workweeks. See generally Twombly, 550 U.S. at 555; see also N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.16; see also Lundy v. Catholic Health Sys. Of Long Island, Inc., 711 F.3d 106 (2d Cir. 2013) (granting dismissal of plaintiffs' claims for alleged unpaid overtime several times due to the paucity of facts alleged and the conclusory nature of allegations such as plaintiff "occasionally" worked an additional shift or meal breaks were "typically" missed or interrupted which did not specify which weeks such actions occurred).

Although Plaintiff has alleged that his "per class compensation was not intended to and did not compensate Oram for time spent performing other tasks that were required of him as a SoulCycle employee," (AC ¶ 39) including training, preparing for classes, compiling playlists, attending meetings, and communicating with customers (AC ¶ 37), Plaintiff's Contract stated that his compensation was for "all services rendered by employee in connection with employee's employment" and described

15

such services as including, but not limited to, teaching no less than 11 classes per week, attending regular staff meetings, attending continuing education sessions, compiling playlists and contributing to the Company's music library, offering content for the Company's website, and setting up new riders for the class. (See Morris Aff. Ex. "1".)  This list of Services, enumerated in the Contract, included the same list of tasks Plaintiff concedes he was required to perform in Paragraph 37 of the AC, which he has alleged his compensation was not intended to cover.

The AC fails to state Plaintiff's actual rate of pay (per class or otherwise), or his total number of hours worked per week. The offer letter of Soul Cycle LLC, dated January 4, 2010 (a copy of which is attached to the Morris Aff. as Exhibit "1"), stated that Plaintiff was initially paid at a rate of $130 per class with a schedule of at least eleven classes per week. (See Morris Aff. Ex. "I".)  The AC has alleged that each class was 45 minutes long and that Oram worked an additional 15 to 25 hours per week in addition to his class schedule. (AC ¶ 45). From these allegations, then, at the least, Plaintiff worked a total of 23.25 to 33.25 hours a week and was paid at least $1,430 each week, and that his rate of pay ranged anywhere from $43.00 to $60.55 per hour, dependent on the total number of

16

hours worked per week.  The Plaintiff's allegations thus fail to adequately describe a minimum wage violation as a matter of law.

The second claim for relief has alleged that Plaintiff and the New York Class were not paid "all their wages with the requisite frequency," and it rests on Plaintiff's allegations that he was not paid a proper wage for his non-class-time work. Because Plaintiff has not adequately pled that he was not paid the appropriate minimum wage under the NYLL for all hours worked, Plaintiff's second claim for relief is likewise dismissed for failure to state a claim. Accordingly, Plaintiffs first and second claims for relief fail as a matter of law.

Plaintiff's third claim for relief has alleged unlawful deductions from his wages (AC ¶ 94) in that his allegedly unreimbursed business expenses "for items necessary to perform his job including but not limited to MP3 players, ipods, music, CDs, computers, mixing software, and travel expenses," equated to an unlawful deduction of his wages under NYLL § 193 and 12 N.Y.C.R.R. § 142-2.10. (AC ¶¶ 40, 93-98). However, under New York law, employers do not have to reimburse employees for business expenses, including "tools of the trade," so long as not doing so does not reduce the employee's wage below the minimum wage. See Lin v. Benihana Nat'l Corp., 10 Civ. 1335

17

(VM)(JCF), 2010 U.S. Dist. LEXIS 132871, *15-17 (S.D.N.Y. Nov. 9, 2010) (finding that as employers can require employees to bear the costs of tools of the trade as long as it does not reduce their wages below minimum wage, plaintiffs failed to present their allegations with sufficient specificity because they did not provide details regarding the cost of the tools each purchased, nor did they state whether those costs reduce their wages below the minimum threshold); see also Maldonado v. La Nueva Rampa, Inc., 10 Civ. 8195 (LLS)(JLC), 2012 U.S. Dist. LEXIS 67058, *25 (S.D.N.Y. May 14, 2012) (holding that employees could recover the costs of their equipment and repairs because such costs dropped the employees below the minimum wage.)

As concluded above, Plaintiff's Offer letter and Contract, when read in conjunction with Plaintiff's AC, establish that Plaintiff earned more than the applicable minimum wage. Plaintiff's conclusory allegations that he was never reimbursed for alleged business expenses, without any allegation as to the cost of these expenses or how they remove his salary outside of minimum wage requirements, inadequately allege his third claim under the NYLL.

Plaintiff has provided no support for his contention that part (a) of 12 NYCRR § 142-2.10 provides a "blanket

18

protection" and prohibits deductions for business expenses over

and above the protection provided in part (b) of 12 NYCRR § 142-

2.10, thereby making part (b) superfluous. (Pl. Opp. at 13)

Courts have read § 142-2.10(a) specifically as prohibiting

"deductions for spoilage or breakage; . . . deductions for cash

shortages or losses; [or imposing] fines or penalties for

lateness, misconduct or quitting by an employee without notice"

and have found §142-2.10(b) to prohibit employers from reducing

the "minimum wage for expenses incurred by an employee in

carrying out duties assigned by an employer." Lewis v. Alert

Ambulette Serv. Corp., 11- CV-442(JBW), 2012 U.S. Dist. LEXIS

6269, *14 (E.D.N.Y. Jan. 19, 2012). Plaintiff has not offered

any allegation of spoilage and appears to have always earned

above minimum wage for all hours worked.  Accordingly,

Plaintiff's conclusory allegations that he was never reimbursed

for alleged business expenses are not enough to support a claim

under the NYLL § 193. Plaintiff's Third Claim for Relief is

therefore also dismissed.


**The Motion To Dismiss The Tenth Cause Of Action
For Retaliation Is Denied**


NYLL § 215 states with respect to retaliation:

> No employer or his agent, or the officer or agent of
> any corporation, shall discharge, penalize, or in any
> other manner discriminate against any employee because
> such employee has made a complaint to his employer, or
> to the commissioner or his authorized representative,
> that the employer has violated any provision of this
> chapter, or because such employee has caused to be
> instituted a proceeding under or related to this
> chapter, or because such employee has testified or is
> about to testify in an investigation or proceeding
> under this chapter.

NYLL § 215.


The Defendants have contended that the Plaintiff must

have made a good faith complaint about his employer's alleged

wage and hour violations *during* his employment with the

defendant employer in order to raise a colorable claim.  (Opp.

at 16-17) (citing NYLL § 215, which "provides that neither an

employer nor its agent may discharge, threaten, penalize, or in

any other manner discriminate or retaliate against any employee

because such employee has made a complaint . . . that the

employer has engaged in conduct that the employee, reasonably

and in good faith, believes violates any provision of this

chapter."; Paz v. Piedra, 90 Civ. 03977 (LAK)(GWG), 2012 U.S.

Dist. LEXIS 4034, *30 (S.D.N.Y. Jan. 12, 2012).) Defendants cite

in support case law establishing that to make a prima facie case

under NYLL Section 215, "the plaintiff must adequately plead

that *while* employed by the defendant, [he] made a complaint

20

about the employer's violation of the law and, as a result, was
terminated or otherwise penalized, discriminated against, or
subjected to an adverse employment action." Copantitla v.
Fiskardo Estiatorio, Inc., 788 F. Supp.2d 253, 302 (S.D.N.Y.
2011) (emphasis added); see also Paz, 2012 U.S. Dist. LEXIS 4034
at *30 (finding that plaintiff must have made the complaint
"while employed by the defendant" to establish a prima facie
case); Reilly v. Natwest Markets Group, Inc., 178 F. Supp.
2d420, 427 (S.D.N.Y. 2011) ("New York Labor Law § 215(1) applies
to retaliatory actions taken by an employer against an
employee").

Plaintiff has alleged that his employment with
SoulCycle ended on April 15, 2013 (AC ¶ 32) and that in May of
2013, he filed his Complaint in the instant action (AC ¶ 33) and
that after Plaintiff filed the First Complaint, Soul Cycle
"explicitly told [Plaintiff and his counsel, Douglas Wigdor]
that they were not permitted on SoulCycle's premises." (AC
¶ 34).  Because the alleged violations of the law did not occur
until weeks after Plaintiff's employment with SoulCyle ended,
Defendants contend that Plaintiff has failed to state a claim
for relief. (AC ¶¶ 32-34).

21

However, former employees have been recognized as covered by NYLL § 215. See Liverpool v. Con-Way, Inc., 08 Civ. 4076 (JG)(JO), 2009 WL 1362965 (E.D.N.Y. May 15, 2009). In Liverpool, the court concluded that NYLL § 215 paralleled state and federal antidiscrimination law in covering former employees. Id. at * 11; see also Robinson v. Shell Oil Co., 519 U.S. 337 (1997) (finding former employees covered under Title VII because a failure to do so would conflict with "a primary purpose of anti-retaliation provisions: Maintaining unfettered access to statutory remedial mechanisms"); Boland v. Town of Newington, No. 3:05 Civ. 01739 (VLB), 2007 WL 2071630, at *2 (D. Conn. July 16, 2007) (holding former employees protected against retaliation under the ADEA); Ballen-Stier v. Hahn & Hessen, L.L.P., 727 N.Y.S.2d 421, 422 (1st Dep't 2001) (noting that "the term 'employee' as used in the [New York State and City] anti-discrimination statutes encompasses former employees").  The position taken by the defendants that NYLL § 215 covered only current employees as "unpersuasive," because it failed to provide any explanation for its chosen definition of an employee.  In concluding instead that NYLL § 215 covers former employees, the court in Liverpool noted:

> [T]he right-to-sue provision of Section 215(2) provides that "[a]n employee may bring a civil action" against an employer who violates this section. This

> language strongly suggests that the term employee in
> this section includes former employees. If it did not,
> an employee who was discharged for filing a complaint
> against his employer for a Labor Law violation would
> not have a right of action under the law. This cannot
> be the intent of the statutory provision, as a
> wrongful discharge is the archetypal example of the
> kind of adverse action retaliation provisions are
> drafted to prevent.

Liverpool, 2009 WL 1362965, at *12; see also Ballen-Stier v.

Hahn & Hessen, L.L.P., 727 N.Y.S.2d 421, 422 (1st Dep't 2001)

(citing Robinson in a case involving retaliation under the New

York City Human Rights Law for the proposition that "the term

'employee' as used in the antidiscrimination statutes

encompasses former employees).  Though the Defendants have

characterized Liverpool as an outlier (Memo in Further Support,

p. 7), there are few if any New York cases on point in this

issue and only Liverpool attempts to resolve the ambiguity in

the language of the statute concerning the term "employee."

Liverpool, 2009 WL 1362965, at *12.  As Liverpool explains, the

cases cited by Defendants, which interpret the statute's

language "while employed by the defendant" to preclude former

employees, offer no reasoning for this limiting definition.

See, e.g., Reilly v. Natwest Markets Group, Inc., 178 F. Supp.

2d 420, 427 (S.D.N.Y. 2011); Copantitla v. Fiskardo Estiatorio,

Inc., 788 F. Supp.2d 253, 302 (S.D.N.Y. 2011); Paz v. Piedra, 90

Civ. 03977 (LAK)(GWG), 2012 U.S. Dist. LEXIS 4034, *30 (S.D.N.Y.

23

Jan. 12, 2012).  The Supreme Court addressed this issue in the
context of the antiretaliation provision of Title VII of the
Civil Rights Act of 1964 in Robinson v. Shell Oil Co., 519 U.S.
337 (1997).  Although the Supreme Court noted that the term
"employees" suggested "an existing employment relationship," id.
at 341, it ultimately concluded that an analogous
antiretaliation provision in Title VII was ambiguous, and should
be read to encompass former employees to further "a primary
purpose of antiretaliation provisions: Maintaining unfettered
access to statutory remedial mechanisms." Id. at 346.  As the
court found in Liverpool, the persuasive reasoning of the
unanimous Court in Robinson[1] suggests an identical result in this

---

[1] The provision at issue in Robinson made it unlawful "'for an employer to
discriminate against any of his employees ...' who have either availed
themselves of Title VII's protections or assisted others in so doing." Id.
at 339 (citing 42 U.S.C. § 2000e-3(a) ).   Although the Supreme Court noted
that the term "employees" suggested "an existing employment relationship,"
id. at 341, the Court ultimately concluded that the language was ambiguous
for three reasons.

First, the court noted that "there is no temporal qualifier in the statute
such as would make plain that [it] protects only persons still employed at
the time of the retaliation." Id.  The same is true here.  The Court then
observed that the statutory definition of employee ("an individual employed
by an employer") "lacks any temporal qualifier and is consistent with either
current or past employment." Id. at 342. Again, the same is true for this
provision. The definition at issue in Robinson could mean "an individual who
is employed by an employer," but it could also mean "an individual who was
employed by an employer." Similarly, the definition of employee in Section
2(5) could refer to "a laborer who is working for another" or "a laborer who
was working for another for hire." Thus, it is "consistent with either
current or past employment." Robinson, 519 U.S. at 342.  Finally, the Court
observed that a number of other provisions in Title VII use the term
"employees" to mean something more inclusive or different than "current
employees." For example, §§ 706(g)(1) and 717(b) both authorize affirmative

24

case.  To leave a discharged employee without remedy for

retaliation because of a failure to have complained during

employment defeats the salutary purpose of § 215.  While it is

the minority view on the issue, given the Appellate Division

decision, in this case it is the correct one.


As Defendants correctly note, in the context of NYLL

§ 215, an adverse action constituting retaliation is one that

"might have dissuaded a reasonable worker from making or

supporting similar charges." Copantitla v. Fiskardo Estiatorio,

Inc., 788 F. Supp.2d 253, 303 (S.D.N.Y. 2011). Courts have

routinely held that this definition encompasses a broad range of

retaliatory acts, including those not traditionally implicated

in an employer-employee relationship. See, e.g., Kreinik v.

Showbran Photo, Inc., No. 02 Civ. 1172 (RMB)(DF), 2003 WL

22339268 at *9 (S.D.N. Y. Oct. 14, 2003 ) (defendant's filing of

counterclaims constituted sufficient adverse employment action

under § 215 because "counterclaims asserted against [plaintiff]

could harm his reputation in his industry and negatively affect

remedial action (by a court or EEOC, respectively) "which may include . . .
reinstatement or hiring of employees." 42 U.S.C. §§ 2000e-5(g)(1) and 2000e-
16(b).  As petitioner notes, because one does not "reinstat[e]" current
employees, that language necessarily refers to former employees. Likewise,
one may hire individuals to be employees, but one does not typically hire
persons who already are employees.  Id. The fact that, as Defendants point
out, NYSHRL uses the term "individual" or "person" instead of "employee" as
used in NYLL § 215 does not negate this reasoning.

his prospective employment or business opportunities");

Electchester Hous. Project, Inc. v. Rosa, 639 N.Y.S.2d 848, 849

(2d Dep't 1996) (under similar provision in New York Executive

Law, contesting of plaintiff's unemployment benefits after

plaintiff filed a complaint with State Division of Human Rights

constituted retaliation); Castagna v. Luceno, 09 Civ. 9332 CS,

2011 WL 1584593 (S.D.N.Y. Apr. 26, 2011) ("employment actions

less severe than outright termination may ... serve as the basis

for a valid Section 215 claim").


        NYLL § 215 makes it unlawful to "discharge or in any

other way discriminate against any employee because such

employee has filed a complaint." A plaintiff establishes a

prima facie claim under NYLL § 215 if he demonstrates that

"while employed by the defendant, he made a complaint about the

employer's violation of the law and, as a result, was terminated

or otherwise penalized, discriminated against, or subjected to

an adverse employment action." Paz, 2012 WL 121103, at *10

(S.D.N.Y. Jan. 12, 2012) (quoting Raniola v. Bratton, 243 F.3d

610, 625 (2d Cir.2001)). Upon such a showing, "the burden of

production shifts to the employer to demonstrate that a

legitimate, nondiscriminatory reason existed for its action."

Id.; see also Copantitla, 788 F. Supp. 2d at 303 (in determining

26

whether an action is retaliatory under NYLL § 215, courts have looked to whether the alleged adverse employment action "might have dissuaded a reasonable worker from making or supporting similar charges.").

Defendants contend that the alleged retaliatory act, Defendant's refusal to allow Plaintiff and his counsel on SoulCycle premises, does not rise to the level of retaliation to trigger protection under NYLL § 215.  Defendants cite courts finding viable retaliation claims where employers filed false criminal charges, discharged employees, or reduced the employees hours and pay, but do not cite any court holding that lesser forms of "penalty" or "retaliation" should not be considered under NYLL § 215.  Defendants have not demonstrated a "legitimate, nondiscriminatory reason" for banning Oram and his counsel from SoulCycle premises.  See Paz, 2012 WL 121103, at *10 (S.D.N.Y. Jan. 12, 2012) (quoting Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir.2001)).  As such, this ban does on attendance, whether or not it constitutes retaliation to a reasonable worker in Oram's position, remains a triable issue to warrant protection under NYLL § 215.

**The Motion To Strike Is Granted In Part And Denied In Part**

27

Pursuant to Fed. R. Civ. P. Rule 12(f), a party may move to strike from any pleading any "[r]edundant, immaterial, impertinent, or scandalous matter."  Rule 12(1) is "designed to reinforce the requirement in Rule 8(c) that pleadings be simple, concise, and direct." In re Merrill Lynch & Co., Inc. Research Reports Sec. Litigation, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); see also Doe v. Wash. Post Co., 12 Civ. 5054 (PAE), 2012 U.S. Dist. LEXIS 120876, *6 (S.D.N.Y. Aug. 24, 2012) ("When a complaint is not short and plain, or its averments are not concise and direct, the district court has the power, on motion or sua sponte, to dismiss the complaint or to strike such parts as are redundant or immaterial.") Although motions to strike are generally disfavored, "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (citations omitted). Stated differently, a court may strike matter from a complaint where its material is prejudicial. Id. (citing Wright Miller & Marcus, Fed. Prac. & Proc.: Civil 2d § 1382, at 714 (West 1994 & Supp. 2001)) ("Scandalous allegations . . . will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations."); see also Smith v. AVSC Int'l., Inc., 148 F. Supp.2d 302, 317 (S.D.N.Y. 2001).

28

Rule 12(1) motions invoke the discretion of the court which may strike any allegations it deems immaterial to the causes of action pled. See Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988) (noting "when a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . ."); see also Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references that were "immaterial and impertinent to the case" because they served "no purpose except to inflame the reader"); Kent v. AVCO Corp., 815 F. Supp. 67, 71 (D.Conn. 1992) (striking immaterial allegations where the value of allowing the allegations "is outweighed by the prejudicial effect they would have").

The Preliminary Statement of the AC includes certain unnecessary and inappropriate statements prejudicial to Defendants in that as a pleading, the AC may be reviewed by the jury at the trial of this matter. The AC's first paragraph is subject to the mandate of Rule 8(d)-(e) which requires that "[e]ach allegation . . . be simple, concise, and direct." The Plaintiff makes no claims on behalf of customers of Soul Cycle. However, the AC states:

29

> SoulCycle's unlawful wage practices are consistent
> with its mistreatment of customers - amazingly,
> SoulCycle does not provide any reimbursement to
> customers who are unable to attend classes they sign
> up for (unless they cancel the class by 5:00 pm the
> night before), even when SoulCycle is able to re-sell
> the vacant bike spot. As a result, Soul Cycle very
> often generates revenue from classes at a rate that
> exceeds the total number of bikes in a studio, to the
> detriment of its customers.

(AC ¶ 1). The AC's allegations to SoulCycle's alleged

"mistreatment of customers" are immaterial and irrelevant to

this case and the alleged "mistreatment of customers" "serves no

purpose except to inflame the reader" and accordingly, will be

stricken.[2] See Morse, 777 F. Supp. at 319; see also Alloco v. Dow

Jones & Co., 02 Civ. 1029 (LMM), 2002 U.S. Dist. LEXIS 12542, *5

(S.D.N.Y. Jul. 10, 2002) (striking allegations of defendants'

employees use of company computers to send pornography as

irrelevant when the complaint only contained claims of breach of

a collective bargaining agreement, breach of covenant of good

faith and fair dealing and fraud).

The Defendants also seek to strike certain language

from the AC's first paragraph:

---

[2] Its only relevance may be as explanation for the retaliation discussed
above.  Regardless, its unnecessary prejudicial value outweighs any potential
relevance.

30

- SoulCycle's wage and hour violations are 'spinning' out of control and this lawsuit attempts to 'hit the brakes' on these unlawful practices.

- [W]hile Soul Cycle has built its highly successful and profitable business on the backs of the 'best instructors' in the industry . . .

(AC ¶ 1.)  The Plaintiff is under no obligation to conform allegations in his complaint to Defendants' stylistic tastes or preferences. See Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp.2d 821 (S.D.N.Y. 2008) (denying motion to strike in spite of defendants' objections that the allegations were "narrative or contain[ed] generalized statements or matters of opinion").  These allegations encapsulate in colloquial terms certain of the claims asserted by the Plaintiff and are merely colorful rather than prejudicial.  The motion to strike with respect to these allegations is therefore denied.

## Conclusion

Upon the conclusions set forth above, the motion of the Defendants to sever the California claims is denied at this time without prejudice to renewal, the motion of the Defendants to dismiss the First, Second and Third causes of action is granted, the motion of the Defendants to dismiss the Tenth cause of action is denied and the motion to strike allegations from the AC is granted in part and denied in part as set forth above.

It is so ordered.

New York, NY
October 28, 2013

_____
ROBERT W. SWEET